# SIGAFUS *v.* PORTER.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND
CIRCUIT.

No. 8.    Argued November 15, 16, 1899.—Decided October 29, 1900.

The defendant in the court below moved to dismiss this case on the ground
that the contract in relation to the property in question was with Griffith
alone, and, that motion being denied, proceeded to offer evidence.   *Held*
that he could not assign the refusal to dismiss as error.

In *Smith* v. *Bolles*, 132 U. S. 125, it was held that, " in an action in the nature
of an action on the case to recover from the defendant damages which
the plaintiff has suffered by reason of the purchase of stock in a corpo-
ration which he was induced to purchase on the faith of false and fraud-
ulent representations made to him by the defendant, the measure of
damages is the loss which the plaintiff sustained by reason of those rep-
resentations, such as the money which he paid out and interest, and all
outlays legitimately attributable to the defendant's fraudulent conduct;
but it does not include the expected fruits of an unrealized speculation;
and further that, in applying the general rule that ' the damage to be re-
covered must always be the natural and proximate consequence of the
act complained of ' those results are to be considered proximate which
the wrong-doer, from his position, must have contemplated as the prob-
able consequence of his fraud or breach of contract."   In this case that
decision is affirmed and applied to the facts and issues here, and it is *held*
that, upon the assumption that the property was not worth what the
plaintiffs agreed to give for it, they were entitled, a verdict being ren-
dered in their favor, and if the evidence sustained the allegation of false
and fraudulent representations upon which they relied and were entitled
to rely, to have a verdict and judgment, representing in damages the dif-
ference between the real value of the property at the date of its sale to
the plaintiffs and the price paid for it, with interest from that date, and,
in addition, such outlays as were legitimately attributable to the defend-
ant's conduct, but not damages covering " the expected fruits of an un-
realized speculation."

THE case is stated in the opinion of the court.

*Mr. Edmund Wetmore* for plaintiff in error.   *Mr. Henry B.
Johnson* was on his brief.

*Mr. Albert Stickney* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought to recover damages for deceit alleged to have been practiced by Sigafus, the plaintiff in error, upon Porter, Hobson and Morse, the defendants in error, in the sale by the former to the latter of a gold mine in California, known as the Good Hope Consolidated Gold Lode Mining Claim (consisting of the San Jacinto and Good Hope Quartz locations), and as the Annex, adjoining the Good Hope mine on the south.

The complaint alleged that the defendant Sigafus was president of the Good Hope Consolidated Gold Mining Company, a corporation of California possessing the legal title to the property in question, and that with the exception of a few shares standing in the name of his son-in-law he owned its entire capital stock, and was in fact the sole beneficial owner of the mine and the lands and property appurtenant thereto;

That prior to December 28, 1893, the defendant representing his own interests and those of the company as well as those of his son-in-law, and acting by one William H. Griffith, entered into negotiations with the plaintiffs for the sale of the mine, mining claims and their appurtenances;

That in the course of such negotiations the defendant falsely and fraudulently and with intent to deceive and defraud the plaintiffs, represented to them that the lands and mines and mining claims contained a large and valuable vein of gold-bearing ore, large and valuable deposits of gold, and that all of the gold-bearing quartz would average in milling more than $16 per ton;

That he laid before the plaintiffs a false and fraudulent report or statement in writing in regard to the lands and mines and mining claims, made by one Burnham, who was therein represented to be an independent and disinterested mining engineer and expert, and to have made a careful and complete examination in the premises, which report or statement in substance stated that the pay streak in the mine had an average width of two feet, that 2434 tons of ore from the mine had been milled and yielded an average value in gold of $23.78 per ton, that the mine had been operated and the ore taken therefrom had been

milled for two years or more and had yielded, in gold, an average of $23.78 per ton; that the value of the bullion produced from the mine for the twelve months ending with January, 1892, inclusive, was $57,879.78, and the total expense of production $15,500; that the estimated total bullion product from the mine after its discovery down to on or about February 1, 1892, was $317,879.78; that beyond all doubt the ore averaged at least $18 per ton in gold; that the mine contained 44,733 tons of gold ore in reserve, of the net value of $805,186, and also 37,333 tons of gold ore in sight, of the net value of $761,094, and that the mines and mining claims had a very large prospective value in addition thereto; that the gold-bearing vein in the mine was a permanent and lasting one, and that the property under energetic management should produce from $30,000 to $40,000 per month net, and keep the development even with the output; together with other statements of fact in regard to the property, each and all of which were false and fraudulent, representing said report to be just, accurate and true, although knowing the same to be false and fraudulent;

That during the course of a mill run of the mine made by the plaintiffs for the purpose of testing the value of the ores contained therein, the defendant falsely and fraudulently, and with intent thereby to deceive and defraud them, placed and caused to be placed, in and among the ores to be reduced in the mill run, exceptionally rich specimens of ore that were not part of the ordinary production of the mine, and placed and caused to be placed therein large quantities of exceptionally rich ore that had been mined on the premises, but reserved by him over a long period of time, and which contained gold far in excess of the average amount carried by the ore produced from the mine, and caused false and fraudulent representations to be made as to the amount of ore run through the mill at that time, understating the same, with the intent and result, that a much larger production of gold might seem to be produced from the ore reduced than was just and true; and,

That the defendant falsely and fraudulently, and with the intent thereby to deceive and defraud the plaintiffs, represented to them that certain portions of the mine, from which all the

valuable ore had been extracted, were still solid and untouched, and blocked up the entrance to such excavations with timber, which he falsely and fraudulently stated was placed in the mine for the purpose of support, and that it was dangerous to remove the same, with the intent and result of thereby preventing the plaintiffs and their representatives from investigating the condition of the mine; and falsely and fraudulently, and with the intent to thereby deceive and defraud the plaintiffs, changed certain bullion returns as to past production, misstating the quantities of ore producing the bullion so as to show a much larger and richer production of gold from the ore mined than had in fact been made.

It was alleged that all these representations were made and all these acts were done and caused to be done in the full knowledge that they were false and fraudulent and calculated to deceive and defraud, and with the intent and result that the same should be communicated to the plaintiffs, and thereby deceive and defraud them, inducing the belief that the land, mine and mining claim were worth at least the sum of $1,000,000.

The complaint further alleged that if said representations, reports and mill run had been true and accurate, the property would have been reasonably worth $1,000,000, whereas, as the defendants knew at the time, it was worth practically little or nothing; that, relying upon the representations, reports and mill run mentioned, the plaintiffs purchased the property for the sum of $400,000, paying $150,000 in cash, and executing notes and mortgages upon the property to the amount of $225,000, as part of the price; and had paid, laid out and expended large sums of money on the property in the attempt to develop it.

The plaintiffs therefore claimed that they had suffered damage to the amount of $1,000,000, for which they prayed judgment.

The defendant denied each and every allegation of the complaint. He specifically denied that he ever made any representations to the plaintiffs, directly or indirectly, through Griffith or at all, in reference to the property, or that he ever sold it to or received any money from them on account of it.

It may be here stated that there was evidence in the case tending to show that the negotiations for the property were between the plaintiffs and Griffith, and it was a question whether Griffith was to be deemed in any sense an agent of Sigafus in the sale of the property to the plaintiffs. It was also a question whether the defendant did or caused to be done anything that was calculated to mislead and deceive, or did in fact mislead and deceive the plaintiffs in their preliminary examination of the property by an expert, whereby they were induced to think that it had a value which, within the defendant's knowledge, it did not really possess.

There was a verdict in favor of the plaintiffs for $330,275. A motion for new trial having been denied, judgment was entered for the amount of the verdict. The case was carried to the Circuit Court of Appeals, and that court, while sustaining the rulings of the trial court on questions involving the admission and exclusion of evidence, left certain points undisposed of in order that the question raised by them could be certified to this court. The Circuit Court of Appeals — Judge Lacombe delivering the opinion of the court — among other things said : " The only remaining assignments of error are the twenty-sixth, to so much of the charge as instructed the jury that the ' measure of damages is the difference between the value of the property as it proved to be and as it would have been as represented,' and the twenty-eighth, to the refusal to charge substantially that the measure of damages is the money plaintiffs had paid out for the mine with interest and any other outlay legitimately attributable to defendant's fraudulent conduct, less the actual value of the mine when plaintiffs bought it. In view of the recent opinion in *Smith* v. *Bolles*, 132 U. S. 125, this court desires the instruction of the Supreme Court for its proper decision of the question arising upon these two assignments of error. A certificate in the form required by the act of March 3, 1891, has therefore been prepared and will be forwarded to the Supreme Court. The fact that instructions are thus desired as to a single question out of the many arising upon this writ of error affords no sufficient ground for withholding the decision of this court as to the other questions in the cause. *Compton* v. *Wabash*

*Railroad,* 31 U. S. App. 486. This opinion is therefore placed on file, and when instructions are received as to the questions certified the cause will be finally disposed of." 51 U. S. App. 693; 84 Fed Rep. 430, 439.

This case was heard here upon the question certified from the Circuit Court of Appeals. But after it was argued and submitted, this court directed the entire record to be sent up, and the case is now before us upon writ of certiorari.

1. At the trial in the Circuit Court, the evidence in behalf of the plaintiffs being closed, the defendant moved to dismiss the complaint upon several grounds, one of which was that the contract in relation to the property in question was alone with Griffith. That motion was denied, and the defendant then introduced evidence in his behalf. The Circuit Court of Appeals properly held that as the defendant did not rest upon the denial of his motion to dismiss, but introduced evidence, he could not assign the refusal to dismiss as error. *Columbia & Puget Sound Railroad* v. *Hawthorne,* 144 U. S. 202; *Union Pacific Railway* v. *Daniels,* 152 U. S. 684; *Runkle* v. *Burnham,* 153 U. S. 216.

2. After calling attention to the material issues of fact, and after stating the general propositions of law upon which, when applied to the evidence, the rights of the parties depended, the Circuit Court charged the jury:

" The measure of damages in actions of this nature is the difference between the value of the property as it proved to be and as it would have been as represented. You may find that the plaintiffs were influenced by one or more and not by all of the representations, and to the extent that the plaintiffs have been injured by one of several misrepresentations, they are entitled to recover for that; that is, if you find the various issues of fact which I have left for your consideration in favor of the plaintiffs."

To the giving of this instruction the defendant took an exception.

The defendant asked that the jury be instructed as follows:

" If the jury find for the plaintiffs, they can only find as damages the direct pecuniary loss, if any, the plaintiffs suffered by reason of the false and fraudulent representations and acts of

the defendant, and the value of the mine, if the same had been as represented, affords no proper element of recovery. The value of the mine when plaintiffs bought it must be applied in reducing and extinguishing the plaintiffs' loss."

The Circuit Court refused to give this instruction, and to such refusal the defendant took an exception.

The question presented by the charge to the jury touching the measure of damages has been heretofore determined by this court in *Smith* v. *Bolles*, 132 U. S. 125, 129. That was an action to recover damages for alleged fraudulent representations in the sale of four thousand shares of mining stock at the price of $1.50 per share, that is, $6000. The petition alleged that the stock was wholly worthless, but would have been worth at least ten dollars per share, that is, $40,000, if it had been as represented by defendant. The prayer was for $40,000 as damages arising from the sale of shares of stock for which only $6000 was paid. The trial court instructed the jury that " the measure of recovery is generally the difference between the contract price and the reasonable market value if the property had been as represented to be, or in case the property or stock is entirely worthless, then its value is what it would have been worth if it had been as represented by the defendant, and as may be shown in the evidence."

This court held that instruction to be erroneous. Speaking by the Chief Justice we said: " The measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented to be, even if the stock had been worth the price paid for it; nor if the stock were worthless, could the plaintiff have recovered the value it would have had if the property had been equal to the representations. What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract. The gist of the action was that the plaintiff was fraudulently induced by the defendant to purchase stock upon the faith of certain false and fraudulent representations, and so as to the other persons on whose claims the plaintiff sought to recover. If the jury believed from the evidence that the defendant was

guilty of the fraudulent and false representations alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation. The reasonable market value, if the property had been as represented, afforded, therefore, no proper element of recovery."

These principles have been applied in numerous cases in the Federal courts. *Atwater* v. *Whiteman*, 41 Fed. Rep. 427, 428; *Glaspell* v. *Northern Pacific Railway Co.*, 43 Fed. Rep. 900, 904; *The Normannia*, 62 Fed. Rep. 469, 481; *Wilson* v. *New United States Cattle Ranch Co.*, 73 Fed. Rep. 994, 997; *Rockefeller* v. *Merritt*, 40 U. S. App. 666, 674. In the case last cited Judge Sanborn said: "The true measure of the damages suffered by one who is fraudulently induced to make a contract of sale, purchase, or exchange of property is the difference between the actual value of that which he parts with and the actual value of that which he receives under the contract. It is the loss which he has sustained, and not the profits which he might have made by the transaction. It excludes all speculation, and is limited to compensation."

Substantially the rule announced in *Smith* v. *Bolles* has been applied in the following cases in state courts: *Reynolds* v. *Franklin*, 44 Minnesota, 30, 31; *Redding* v. *Godwin*, 44 Minnesota, 355, 358; *Wallace* v. *Hallowell*, 56 Minnesota, 501, 507; *Woolenslagle* v. *Runals*, 76 Michigan, 545, 553; *Buschman & Cook* v. *Codd*, 52 Maryland, 202, 209; *Greenwood* v. *Pierce*, 58 Texas, 130, 133; *Howes* v. *Axtell*, 74 Iowa, 400, 402; *High* v. *Berret*, 148 Penn. St. 261. In the last named case — which was an action to recover damages for deceit in the sale of shares of stock in a mining corporation — the Supreme Court of Pennsylvania said: "The remaining question is, what is the proper measure of the plaintiff's damages. His damages should equal the loss which the deceit, which the jury have found was prac-

ticed upon him, inflicted. The loss, in the transaction before us, is the difference between the real value of the stock at the time of the sale, and the fictitious value at which the buyer was induced to purchase. . . . His actual loss does not include the extravagant dreams which prove illusory, but the money he has parted with without receiving an equivalent therefor."

The same principle was recognized by the English Court of Appeal in the leading case of *Peek* v. *Derry*, 37 Ch. Div. 541, 591, 594. That was an action to recover damages for the fraudulent representations of the defendant whereby the plaintiff was induced to take shares in a certain company at the price of £4000. The question of the proper measure of damages in such a case was directly presented and considered. Lord Justice Cotton said : " The damage to be recovered by the plaintiff is the loss which he sustained by acting on the representations of the defendants. That action was taking the shares. Before he was induced to buy the shares, he had the £4000 in his pocket. The day when the shares were allotted to him, which was the consequence of his action, he paid over that £4000, and he got the shares ; and the loss sustained by him in consequence of his acting on the representations of the defendants, was having the shares, instead of having in his pocket the £4000. The loss, therefore, must be the difference between his £4000 and the then value of the shares." Sir James Hannen, referring to the question of damages, said in the same case : " The question is, how much worse off is the plaintiff than if he had not bought the shares ? If he had not bought the shares he would have had his £4000 in his pocket. To ascertain his loss we must deduct from that amount the real value of the thing he got." Lord Justice Lopes said : " The question in this case is, what is the loss which the plaintiff has sustained by acting on the mere representation of the defendants, and what is the true measure of his damage ? In my opinion, it is the difference between the £4000 he paid and the real value of the shares after they were allotted." The case having been carried to the House of Lords, the judgment therein was reversed, but not upon grounds at all affecting the ruling made in the Court of Appeal upon the question of the proper measure of damages. *Derry* v. *Peek*, 14 App. 337.

There are adjudged cases holding to the broad doctrine that in an action for deceit, based upon the fraudulent representations of a defendant as to the property sold by him, the plaintiff is entitled to recover, by way of damages, not simply the difference between its real, actual value at the time of purchase, and the amount paid for it by the seller, but the difference, however great, between such actual value and the value (in excess of what was paid) at which the property could have been fairly valued if the seller's representations concerning it had been true. So, in the present case, (taking it to be as set out in the plaintiff's pleadings,) although the defendant agreed to take, and the plaintiff agreed to pay, $400,000 for the property in question, the latter—according to some cases, interpreting literally the words used in them—could retain the property and recover by way of damages the difference between its real value at the date of purchase and the sum of $1,000,000, which the plaintiff alleged it would have been worth at that time if the representations of the defendant concerning it had been true. We held in *Smith* v. *Bolles* that such was not the proper measure of damages, that case being like this in that the plaintiff sought damages covering alleged losses of a speculative character. We adhere to the doctrine of *Smith* v. *Bolles.* Upon the assumption that the property was not worth what the plaintiffs agreed to give for it, they were entitled to have—if the evidence sustained the allegation of false and fraudulent representations upon which they were entitled to rely and upon which they in fact relied—a verdict and judgment representing in damages the difference between the real value of the property at the date of its sale to the plaintiffs and the price paid for it, with interest from that date, and, in addition, such outlays as were legitimately attributable to the defendant's conduct, but not damages covering " the expected fruits of an unrealized speculation." If the plaintiffs were inveigled by the fraud of the defendant into purchasing this mining property, a judgment of the character just indicated would make them whole on account of the loss they sustained. More they are not entitled to have at the hands of the law in this action.

Many other questions have been discussed by counsel, but as

they may not arise upon another trial, we deem it unnecessary now to consider them.

*It results that the trial court erred upon the question of the measure of damages applicable to the case. Its judgment must be reversed with directions for a new trial and for further proceedings consistent with the principles of this opinion, and it is so ordered.*

MR. JUSTICE BROWN and MR. JUSTICE PECKHAM dissented.