CONTINENTAL ASSUR. CO. v. JENSEN.

No. 4497.

Circuit Court of Appeals, Third Circuit.

Feb. 2, 1931.

The opinion of Kirkpatrick, District Judge, was as follows:

## Sur Pleadings and Proofs

This is a suit by the beneficiary of a policy of life insurance to recover the face value of the policy, upon the death of the insured. The defense is that the policy lapsed by reason of nonpayment of the second premium. The fact of nonpayment being admitted, the question involved is whether the insurance company is by the act of its agent estopped to deny such nonpayment.

At the trial a special verdict was taken, certain agreed facts being incorporated into it and the jury answering three interrogatories submitted; it being stipulated that the court should enter such judgment thereon as the law required. The verdict, though somewhat informal, contains all the facts necessary to support a judgment, and the method of submission was in accordance with the agreement of both parties. The evidence consists almost entirely of the testimony of the defendant's agent together with certain letters and written contracts. The questions propounded related to the effect of a certain letter written by the agent to the insured, and to the capacity in which he wrote it. The facts as stipulated or proved by undisputed testimony, are as follows:

On October 5, 1923, the defendant insured the life of Philip K. Jensen in favor of his estate and delivered to him its policy. (Plaintiff's Exhibit No. 1.) The first premium on the policy was paid. The second premium, due October 5, 1924, was never paid: Jensen died December 19 or 20, 1924. The company rejected proofs and refused to make payment for the reason that the policy had lapsed.

The undisputed facts relating to the nonpayment of the second premium may be summarized as follows: The policy allowed a grace period of thirty-one days so that the last day upon which this premium could have been paid, in order to continue the insurance in force by the terms of the policy, was November 5, 1924. On November 4th, late in the afternoon, just as he was closing his office, Goodstein, the agent of the insurance company, who had written the policy, received a telephone call from Mr. Jensen. After asking for a loan of $50, which was refused, Jensen asked Goodstein if he would pay the premium for him. Goodstein replied: "All right, I will, I will try and pay the premium for you, and you will straighten it up with me in a little later." Neither of the two men knew at the time of this conversation whether or not the grace period had actually expired. Before leaving the office, Goodstein dictated and mailed to Jensen a letter containing the following statement: "To help you out in the situation of your life premiums, I am paying for you, the quarterly premium that is now due on your life policy, and at some later date, you will straighten this out with me." In the ordinary course of the mail this letter would have been received by Jensen on November 5th, which was the last day of the grace period.

On the following day Goodstein looked up the record of the Jensen policy, came to the erroneous conclusion that it had already lapsed by expiration of the grace period and that the company would therefore not accept the premium until reinstatement of the policy, and wrote Jensen so advising him and inclosing a blank application for reinstatement. This, of course, reached Jensen after the grace period had expired. Jensen never made application for reinstatement, his death occurring, as has been said, December 19 or 20, 1924, and Goodstein never paid the premium to the company.

 Was the statement quoted above, in Goodstein's letter of November 4th to Jensen, a mere promise to pay, or was it a statement that the premium actually had been paid? Would the recipient, under all the circumstances, be justified in believing that the letter was written to advise him of an accomplished fact rather than to confirm a promise? This was the first question submitted to the jury and is of vital importance. The defendant contends that it was not a question of fact at all, but should have been determined by the court from the language of the letter. Even so, I am inclined to think that the same result would have been arrived at, but I am still of the opinion that it was for the jury in view of the fact that inferences to be drawn from the circumstances must be an important factor in answering it. The words, "I am paying," taken without reference to the circumstances under which they were used, indicate neither a promise to pay in the future nor an act accomplished in the past, but are a statement that the act of paying is being performed simultaneously with the writing of the letter. However, if we read them with the knowledge that, the day before, the writer had said, "I will pay the premium for you," and note that there is no suggestion in the letter that it is written merely to confirm a prior promise but is a statement that the act

previously promised is being performed, the jury's finding that they carried the meaning of a statement of a fact rather than of a promise, appears to be unquestionably correct.

This question being thus answered, the entire case resolves itself into a very simple pattern. It will be seen at once that any question of waiver is wholly eliminated. Had the letter been a promise to extend the time for payment of the premium or an agreement to forego it entirely that question would have to be met. However, if the letter states a fact (as has been found), it is obvious that neither Jensen nor Goodstein could have understood or intended that any term of this policy was being changed or any condition was to be relinquished by the company. On the contrary, Jensen had every reason to believe that the term of the policy relating to payment of premium had been fully complied with. A statement of fact made to an insured by an agent of the company to the effect that a term of a policy has been strictly carried out certainly is not a waiver. It therefore becomes unnecessary to deal with the difficult questions arising in connection with the restriction in the policy upon the agent's power to waive or change any term, nor need we consider the effect of a promise to pay the premium as a promissory estoppel (Williston on Contracts, § 689 et seq.), though in passing it may be noted that the Superior Court of Pennsylvania, in Mc-Ginness v. Caledonian Ins. Co., 78 Pa. Super. Ct. 376, 380 (referred to later), held that an estoppel arose from a promise by an agent.

What is presented by this case is a true issue of estoppel. A statement of a material fact, namely, that a condition of the policy had been complied with, was made to the insured. As a result of such statement the insured permitted the last day of the grace period to go by without making an effort to perform the condition, thus losing a substantial right. True, he might have applied for reinstatement of the policy, but the company was not bound to grant him this and might not have done so without a physical examination or perhaps not at all.

Now the misrepresentation which the plaintiff relies upon as a basis of estoppel in this case was made by an agent. It was not expressly authorized by the company nor was it brought to the company's attention subsequently and ratified by it. Is the company bound by it? This depends, as I take it, upon whether it was a statement made

in connection with a matter which was within the general scope of the agent's authority.

The essence of the doctrine of estoppel is a detriment to the party asserting it. The estoppel of a principal by an agent's misrepresentation is thus more closely related to the tort liability of an employer for the acts of an employee than to the contract liability of one person for agreements made for him by another. In order to determine whether the company is bound by the statement made by Goodstein, it will be necessary to examine very carefully the extent of the general authority committed to him by his principal.

It does not advance the inquiry very much to know that Goodstein considered himself a "general agent." He was not a general agent in the sense of having power to execute and deliver policies. On the other hand, he was much more than merely a soliciting agent. His statement as to which it is contended that this estoppel arises related to the payment of premiums, and the important thing to know with regard to Goodstein's agency, therefore, is his authority with regard to the collection and transmittal of premium payments.

In the first place, the policy of the insurance provides that premiums, while payable at the home office, may also be paid to a duly authorized agent, and Goodstein testified that as a matter of actual practice about 75 per cent. of his policy holders (who were very numerous) paid their premiums to him at his office. (First notice to an insured was sent prior to the due date from the home office of the company. Subsequently, notices were sent out during the period of grace by Goodstein, which notices contained the information that the premium may be paid to him.) Goodstein's contract with his company provides that on the last day of each month (or at any time upon request) he will furnish to the company full detailed statements of all business done by him up to that date and that he will forward at the same time all moneys collected by him. This means principally premiums. While the premiums paid are, of course, reported separately, there is no requirement that they be transmitted separately, and as a matter of practice all premiums received by Goodstein were mingled in a common fund in his bank and transmitted by a single draft at the end of each month. The company holds him personally responsible to it for any premium collected and not remitted by him.

His contract with the insurance company also required Goodstein to transmit, with the money collected by him, unpaid policies and premium receipts. These premium receipts are the receipts referred to in the policy as "The Company's receipt signed by the President or Secretary and countersigned by the Agent designated thereon." While there is no direct evidence on the point, these provisions indicate that it was the practice to send Goodstein these countersigned receipts before he made collections. At any rate, whenever they did come into his hands they must have been for use at his discretion, as there is nothing in the contract limiting him in this regard. This was the situation in Globe Mut. L. Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387, in which the premium had been paid to an agent of the company after the policy had lapsed; the agent giving a receipt therefor. There was, in that case, a provision in the policy against waiver by agents but the court held that, notwithstanding this, the receipt of the premium and delivery of a receipt therefor by the agent did constitute a waiver in view of the scope of the agent's authority. The basis of the decision was waiver and not estoppel, but the important point, as far as this case is concerned, was the ruling as to the extent and scope of the authority of an agent having powers similar to those vested in Goodstein.

The bearing of all this upon the instant case is the clear implication that Goodstein's contractual obligation to the company as to any particular premium was fully satisfied by the transmittal by him to the company of money covering the amount of such premium. The company made no effort to identify any premium and had no interest in where the money originally came from, whether from the insured, from the agent, or from a third party. There are a number of cases holding that where it appears that the parties intended to substitute the agent for the policy holder as the insurer's debtor for the premium, a charge therefor against him by the company operates as a payment between the company and the insured. These include Fidelity & C. Co. v. Willey, 80 F. 497 (C. C. A. 3rd Circuit), and Bank v. Farmersville Ins. & Bkg. Co., Fed. Cas. No. 838. These cases are not referred to as controlling upon the question now before us, since the issue involved in them was not estoppel but actual payment. Their importance here is on the question of scope of authority.

From the facts as stated above it is clear enough that Goodstein would not have been overstepping his authority or violating any provisions of his contract with the company if he had on November 4, 1924, deposited his own money sufficient to cover Jensen's premium in the bank and at the end of the month transmitted it to the insurance company by including the amount in his monthly draft. If he had done so and received credit from the company, it would have been a perfectly valid payment of the premium and binding on the company. Nor would the absence of the premium receipt have affected its validity. Mollosky v. Eureka-Md. Assur. Corp., 93 Pa. Super. Ct. 314. It follows that a representation made by him to the insured that he was paying the premium was a statement made in connection with a matter entirely within the scope of his authority and estops the company.

While no decision has been submitted to me involving the question of estoppel arising from a representation made by an agent that the premium had been paid, there are many decisions based upon estoppel arising from statements made by agents relating to other conditions of the policy which were within the scope of the agent's authority to perform. Thus in Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475, a condition of the policy was that if additional insurance were effected the fact should be indorsed on the policy. The agent had power to make such indorsement. He told the insured that the indorsement had been made. As a matter of fact, it had not. The court said: "It may be conceded that as such general agents they would have no power to waive any express condition in the policy. But the question was not of their power to do this, but whether their declaration of a fact, namely, that the condition had been actually complied with, would not estop the company from controverting that fact. * * * Now, such a declaration made by a duly authorized agent or officer would clearly operate as an estoppel. It lulled the party to sleep by the assurance that the conditions of the policy had been complied with and that his indemnity was secured." In Davis v. Home Insurance Co., 74 Pa. Super. Ct. 92 (a case in which the facts were almost precisely similar to those in the Mentz Case), the court said: "In the case at bar there was no necessity for the plaintiff to attempt to set up a waiver of any provision in the policy. His cause of action exists with every line of the policy in full force and vigor. * * * Let it be noted this [the agent's statement that he had affixed a permit for other insurance to the policy] was a plain bald statement of a fact. It was

no expression of an opinion by the agent. It was a simple declaration that the agent had in fact done, that which he had a perfect right to do; and there was no reason why the insured should not have relied on that statement of fact." In McGinness v. Caledonian Insurance Co., supra, the condition related to the removal of household goods from one town to another. The agent had authority to permit such removal by endorsement on the policy. He told the insured that this would be done but as a matter of fact, did not do it. The court said: "It being thus reasonably clear that the agent was acting, at least, within the apparent scope of his authority, it follows the situation is precisely the same as if the transaction had occurred between the plaintiff and the president of the company at its home office. 'The liability of the principal is coextensive with the agent's ostensible authority.' "

The defendant in his brief also raises the question that the burden of proof of compliance, or, in default of compliance, of a legal excuse for nonperformance was upon the insured, and that when the plaintiff rested he had no case to submit to the jury, and a nonsuit should have been entered. The defendant moved for a nonsuit but, the motion being overruled, introduced evidence. Where a defendant does not rest upon the denial of his motion to dismiss but introduces evidence, he cannot assign the refusal to dismiss as error. Sigafus v. Porter, 179 U. S. 116, 21 S. Ct. 34, 45 L. Ed. 113.

[5] The plaintiff is entitled to interest from the date when the loss was payable, which from the policy appears to be immediately upon receipt of due proof of death. There is no evidence as to when proof of death was received by the company, but it was admitted to have been received at the time the suit was originally brought, and that date (June 8, 1925) will therefore be taken as the date from which interest runs. Judgment is therefore entered for the plaintiff in the sum of $13,050.

William W. Smithers, of Philadelphia, Pa., for appellant.

W. S. Fenerty and E. J. Darreff, both of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

PER CURIAM.

Affirmed on Judge Kirkpatrick's opinion sur pleadings and proofs.