## DAVID ZELIFF, PLAINTIFF-RESPONDENT, v. ALFONSO SABATINO, FILOMENA SABATINO AND A. ALBERT URDANG, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued June 15, 1953—Decided July 28, 1953.

Before Judges GOLDMANN, SMALLEY and SCHETTINO.

*Mr. Abraham I. Mayer* argued the cause for appellant Urdang (*Messrs. Mayer & Mayer,* attorneys).

*Mr. Harold D. Feurstein* argued the cause for appellants Sabatino (*Messrs. Lipstein & Lipstein,* attorneys).

*Mr. Jerome C. Eisenberg* argued the cause for respondent (*Mr. Mervin G. Wiener,* attorney; *Mr. Ralph Neibart, Mr. Eisenberg* and *Mr. Wiener,* on the brief).

GOLDMANN, J. A. D.  Defendants appeal from a judgment of $4,200 and costs entered upon a jury verdict in plaintiff's favor.  The action was one for damages allegedly resulting from a written representation made by defendants in connection with the sale of real property, later determined to be false.

In July 1950 plaintiff became interested in purchasing a four-story brick building on Main Street, East Orange, owned by defendants Sabatino and consisting of four stores and 25 apartments.  He was shown through the premises by a salesman for defendant Urdang, a licensed real estate broker representing the owners.  Urdang then furnished plaintiff with an analysis of the annual income and expenses for the building, one of the expense items being the figure of $1,771.08 representing the cost of fuel oil for the period from February 1, 1949 to February 1, 1950.  The sale price finally agreed upon was $71,750.

During the course of the negotiations plaintiff several times expressed to defendants the importance of the accuracy of the income and expense figures—above all he wanted a safe investment and a sure income.  Defendants assured him the figures were correct.  On August 8, 1950 the parties executed a formal contract among whose provisions was the following:

"It is hereby represented by the sellers ' *   *   *   that the oil bills for fuel from February 1st, 1949 to February 1st, 1950 amounted to $1,771.08   *   *   *."

This language was inserted at the insistence of plaintiff and his attorney.

When title was closed on October 5, 1950, defendants delivered the usual affidavit of title which, among other things, recited:

"Deponents further state that, by the acceptance of the deed and the closing of title, the representations contained in the contract shall remain effective between the parties, with the exception of a stipulation as to the attaining of a new mortgage."

Before executing this affidavit defendants were reminded of the fact that the contract contained certain representations as to expenses and that they were to be bound by them notwithstanding the closing of title and delivery of the deed.

During March 1951 plaintiff found that he was spending more for fuel oil than he had reason to expect in light of defendants' representations. Upon investigation he discovered that the bills for fuel oil delivered during the test period from February 1, 1949 to February 1, 1950 totalled $2,148.20, or $377.12 more than the figure represented. In view of a half cent per gallon discount allowed defendants by the oil dealer, the differential figure was actually $282.74. Plaintiff then instituted suit based upon defendants' fraudulent representations as to fuel costs. The action was commenced by attachment. John Sabatino was not served with process and was therefore not a party at the time of the trial.

Plaintiff testified that after examining the submitted income and expenditure figures he calculated the rate of return on the price originally asked for the property, $73,500, would be 6.7%; on the actual sale price of $71,750 it would be 6.9%. His expert witness Linnett, a realtor-appraiser whose qualifications were not challenged, testified that in paying $71,750 for property of the type involved, a return of 6.7% or 6.9% on the investment was reasonable. Linnett further testified that a reduction in net income of $282.74— the fuel cost discrepancy—would result in a loss to the buyer of $4,220 if capitalized at 6.7%, or of $4,097.67 if capitalized at 6.9%.

Defendants' attempted explanation of the discrepancy in the fuel oil figure was that although oil had been delivered in January 1950, the last month of the test period, bills were not presented until after February 1, 1950, so that the payment then made had not been included in the figure submitted to plaintiff and set out in the contract of sale.

The jury returned a verdict in favor of plaintiff against all the defendants for $4,200. It is from the judgment entered on that verdict that they appeal.

The main contention advanced for reversal, and one which is dispositive of the case, is that there was no legal proof of damages and therefore no basis to support the verdict and judgment below. Defendants' counsel had sought, on cross-examination of Linnett, to determine the market value of the property at the time of sale, but this evidence was excluded when counsel for plaintiff objected to its admission. There was no other testimony relating to such value.

The question for determination is the correct measure of damages in an action for fraudulent misrepresentation. We find courts follow one of two rules in an action such as this. The so-called "benefit-of-the-bargain" rule allows the defrauded party to recover the difference between the actual value of the property at the time of making the contract and the value that it would have possessed had the representations of the seller been true. This rule is followed by the majority of American courts. 24 *Am. Jur., Fraud and Deceit*, § 227, *p.* 55. On the other hand, the "out-of-pocket" rule followed by a minority of jurisdictions (24 *Am. Jur., Fraud and Deceit*, § 228, *p.* 58), entitles the defrauded party to recover the difference between the actual value of the property acquired and the amount expended in acquiring it. *Balura v. McBride*, 75 *N. J. L.* 480 (*E. & A.* 1907), relied upon by plaintiff, adhered to the "benefit-of-the-bargain" rule. But in *Crater v. Binninger*, 33 *N. J. L.* 513 (*E. & A.* 1869); *Duffy v. McKenna*, 82 *N. J. L.* 62 (*Sup. Ct.* 1912); *Mitchell v. Bassett*, 99 *N. J. L.* 110 (*E. & A.* 1924); *Curtiss-Warner Corp. v. Thirkettle*, 101 *N. J. Eq.* 279 (*E. & A.* 1927), and *Kienle v. MacFulton, Inc.*, 12 *N. J. Misc.* 697 (*Sup. Ct.* 1934), our courts followed the "out-of-pocket" rule. See *Schwartz v. Rothman*, 1 *N. J.* 206, 209 (1948), where the two rules are contrasted. It is interesting to note that the cases decided after *Balura v. McBride* do not refer to it; in the opinion of legal analysts New Jersey is definitely committed to the "out-of-pocket" rule. 124 *A. L. R.* 61; 37 *C. J. S., Fraud,* § 143, *p.* 481; 24 *Am. Jur., Fraud and Deceit*, § 229, *p.* 61, *note* 8.

In arguing that the true measure of damages in this case is the excess which he was induced to pay for the property because the cost of fuel oil was understated, thereby depriving him of the expected 6.9% return on his investment, plaintiff in effect seeks application of the "benefit-of-the-bargain" rule. He was successful in having the trial judge charge his theory of the case. This was error in view of New Jersey's adherence to the "out-of-pocket" rule.

Under the latter rule there can be no recovery of damages for fraudulent misrepresentation in connection with the sale of property where the property acquired by plaintiff is worth as much as or more than the amount which he paid therefor. 24 *Am. Jur., Fraud and Deceit*, § 228, *p.* 59. The record is bare of proof as to the actual value of the property for which plaintiff paid $71,750; for all we know, he may well have received his money's worth and more. Accordingly, there was no basis upon which the jury could ascertain plaintiff's damages. Even under the "benefit-of-the-bargain" rule plaintiff failed to prove damages. Recovery under that rule, as already stated, is limited to the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true. No proof was adduced as to either of these items of value; the testimony of plaintiff and his expert revolved around a capitalization of the $282.74 figure on the basis of a 6.7% or 6.9% return.

Both the "benefit-of-the-bargain" rule and the "out-of-pocket" rule require that plaintiff prove the actual value of the property received. Plaintiff failed to establish this figure. All of defendants' efforts to elicit this item of value were resisted by plaintiff and disallowed by the trial court. Counsel for defendant Urdang actually submitted both rules to the trial court in his request to charge, in the following form:

"3. The measure of damage is the difference between the real value of the property purchased, and the value which that property would have had if the representations had been true.

4. The measure of damage is the actual loss suffered by the plaintiff, and this loss is measured by the difference between the price paid and the actual value of the property received."

The court refused to charge either.

Plaintiff relies upon *Rempfer v. Deerfield Packing Corp.*, 4 *N. J.* 135 (1950), as indicating that proof of value is not an essential element in determining damages. That case, however, was not an action for fraudulent misrepresentation but one based upon an injury to real property—the pollution of a lake. In conformity with the general rule relating to injuries to real property, the court there held (*page 147*) that the diminution in value of the property was a proper measure of damages. See 15 *Am. Jur., Damages,* § 107, *p.* 515. The *Rempfer* case is not applicable here.

Nor are plaintiff's expectations of gain a sufficient ground for recovery. In *Smith v. Bolles,* 132 *U. S.* 125, 129, 10 *S. Ct.* 39, 40, 33 *L. Ed.* 279 (1889), which follows the "out-of-pocket" rule, the court said:

"* * * What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract. * * * He [defendant] was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation."

And see *Sigafus v. Porter,* 179 *U. S.* 116, 21 *S. Ct.* 34, 45 *L. Ed.* 113 (1900).

■ A review of the record shows there is ample evidence to support the verdict insofar as defendants' liability is concerned. They made a representation as to the annual cost of fuel oil, intending that plaintiff rely thereon—in fact, knowing he would. The representation was false, and since defendants stated it as a matter within their own knowledge, it was actionable. *Cummings v. Cass,* 52 *N. J. L.* 77, 83 (*Sup. Ct.* 1889); *Schlossman's, Inc. v. Niewinski,* 12 *N. J. Super.* 500, 507 (*App. Div.* 1951). Plaintiff, believing the

representation to be true, acted upon it—as he had every right to do—and was thereby injured.

All the elements of fraudulent misrepresentation are present and proved, except the amount of damages. *Byard v. Holmes*, 34 *N. J. L.* 296 (*Sup. Ct.* 1870); *cf. Schoharie County Coop. Dairies, Inc. v. Eisenstein*, 22 *N. J. Super.* 503, 505 (*App. Div.* 1952). Defendants' liability has been established.

■■ Since the error here relates solely to the amount of damages, the new trial hereby ordered will be limited to that issue.

"* * * When a new trial is necessary it may, in the discretion of the court, be limited to the question with respect to which the verdict is found to be wrong. If separable and if the error relates solely to the *quantum* of damages, it may be set aside as to damages only. *Paolerico v. Wright*, 2 *N. J.* 412 (1949). *Rule* 3:59–1." *Rempfer v. Deerfield Packing Corp.*, 4 *N. J.* 135, 149 (1950).

The judgment below is reversed and the matter is remanded for a new trial as to damages only.