Wallace G. WEST and Claudia M. West, Plaintiffs,

v.

Charles S. ZURHORST and Susan M. Zurhorst, Defendants.

No. 66 Civ. 2333.

United States District Court
S. D. New York.

July 14, 1967.

---

John A. Kiser, New York City, for plaintiffs.

Monroe J. Cahn, New York City, for defendants.

MOTLEY, District Judge.

### Memorandum Opinion On Motion For Summary Judgment

This matter came on by way of cross motions seeking summary relief. Plaintiffs moved this court for an order, Rule 56(c), Fed.R.Civ.P., granting them partial summary judgment on their second claim for relief and directing an assessment of damages. Defendants have cross-moved for an order, Rule 56(c), Fed.R.Civ.P., in favor of defendants dismissing the complaint and each claim sought to be stated therein. Rule 56(c) provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Plaintiffs' complaint, dated August 28, 1966, alleges two claims for relief. The first claim alleges that defendants entered a combination and conspiracy to defraud plaintiffs. Additionally, it is alleged that plaintiffs, relying on false and fraudulent representations by defendants, purchased stock in and loaned money to the Lost Village Operations, Inc., a New York close corporation controlled by defendants at the time of the representations. It is alleged that the representations were made in a letter prospectus in or about May, 1956. Allegedly, the conspiracy was furthered by defendants in or about February, 1961, by the making of further false representations.

Plaintiffs claim that they, relying on defendants' representations between 1956 and 1962, purchased twenty-eight shares in the corporation for an aggregate sum of $14,000. Additionally, between 1962 and 1965, plaintiffs loaned the corporation monies in the amount of $3,500.

Jurisdiction as to plaintiffs' first claim for relief is based on diversity of citizenship, 28 U.S.C. § 1332, and the

pendent jurisdiction of the federal courts. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); See generally, Lowenfels, Pendent Jurisdiction and the Federal Securities Acts, 67 Colum.L.Rev. 474 (1967).

Plaintiffs' second claim for relief allegedly arises under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b),[1] and Rule X–10 B–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5.[2] Jurisdiction is invoked pursuant to 15 U.S.C. § 78aa.[3]

Plaintiffs claim that defendants' letter prospectus, over the signature of defendant Susan M. Zurhorst, was false and fraudulent, failing to disclose material facts as to the title to the property on which the "Lost Village" was located. It is alleged that the prospectus was received in the mail by plaintiffs, and was relied on by them to their detriment in that it induced them to purchase stock in and loan money to Lost Village Operations, Inc.

The material facts as to which the moving parties contend that there is no genuine issue are as follows:

1) By deed dated November 24, 1951, recorded in the Putnam County Clerk's office in Liber 790 at page 484 of Deeds, George W. Turner and others conveyed to defendants Charles S. Zurhorst a certain tract of land situated in the Town of East Fishkill, Dutchess County, New York, described as follows:

All that piece or parcel of land situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, bounded as follows:

On the north by lands now or formerly of the heirs of John Seymour Emans; on the east by lands now or formerly of Richard Turner; on the south by lands now or formerly of said Richard Turner and lands of Allan Smalley and on the west by lands now or formerly of said Allan Smalley and of the heirs of Orrin Fisher, deceased.

Containing 75 acres of land be the same more or less.

The parties of the first part also remise, release and quitclaim to the

1. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange

\* \* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. Rule 10–B5, 17 CFR, Section 240.10b–5, provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate

commerce, or of the mails, or of any facility of any national securities exchange,

"(1) to employ any device, scheme, or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

3. Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa provides in pertinent part:

"The district courts of the United States \* \* \* have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder \* \* \*."

parties of the second part, their heirs and assigns forever all that land, if any, which may lie between the southern boundary of the above described premises and the Grape Hollow Road, it being expressly understood, however, that the covenants hereinafter set forth do not apply to the parcel, if any, quitclaimed by this paragraph.

2) During the year 1955, and thereafter, defendants made public announcement of the discovery of a "Lost Village" on the tract of land. It was asserted that the land was the site of a pre-Revolutionary War village which was believed to be the home of the first American cowboys, and that relics of the now extinct tribe of Wappinger Indians had been discovered there.

3) On or about October 7, 1955, an action was commenced in the Supreme Court of the State of New York, County of Dutchess, against defendants through personal service on them by Stormville Mountain Acres, Inc. This action, bearing Index Number 1302–1959, sought to eject defendants from part of the premises upon which the "Lost Village" was situated and to deny access by defendants to said premises over the road then used for such access.

4) On or about April 3, 1956, defendants caused the incorporation of Lost Village Operations, Inc., a New York corporation. In or about May, 1956, defendants leased to the corporation the premises upon which the "Lost Village" was situated, and delivered possession thereof to the corporation.

5) On or about March 15, 1960, defendants conveyed to the corporation the property, with the same covenants of warranty described in the deed referred to in paragraph 1. (Liber 1049 p. 559)

6) The corporation continued in possession of the said real property until on or about February 7, 1966, when the property was conveyed to defendant Susan M. Zurhorst by the sheriff of the County of Dutchess by sheriff's deed under an execution sale of the property under a judgment against the corporation.

7) From May, 1956, to February, 1966, the corporation was in undisputed physical possession of the real property and used it for its corporate purposes as it chose to do, without any interference of any kind by any person, firm or corporation.

8) On or about April 30, 1956, defendants sent to the plaintiffs through the United States Mails a letter prospectus and leaflet describing a stock offer for the corporation as a "good safe venture," and saying "So, now you know as much about it as we do."

9) Between July, 1956, and April, 1962, plaintiffs purchased twenty-eight shares of stock in the corporation for the aggregate sum of $14,000.

10) Between October, 1962, and March, 1963, plaintiffs purchased promissory notes of the corporation from the corporation in the face amount, and for the aggregate sum, of $3,500.

11) In January, 1964, the corporation was made a party to the Stormville Mountain Acres, Inc. action, and a notice of pendency of said action was filed for the first time on January 20, 1964.

12) The action went to trial before the court and a jury in March, 1965, and on April 2, 1965, after the action had been dismissed as to defendants, the jury returned a verdict in favor of the corporation as follows:

"Verdict

We the jury, by unanimous decision find that the defendant by adverse possession is the owner and entitled to possession of the premises bounded and described in defendants exhibit J dated 4–1–65 namely deed of Geo. W. Turner and all to Chas Zurhorst and Susan Zurhorst Liber 790 page 484."

The court deems the above material facts to be without substantial controversy. Rule 56(d), Fed.R.Civ.P.

Plaintiffs, in addition to the above-listed facts, allege that they did not

learn of the pendency of the ejectment action and the doubts as to defendants' title until June, 1964. They further allege they were induced to invest in the corporation by the letter of April 30, 1956, and that they relied on the statements that this was "a good safe venture". Plaintiffs further state that if they had known of the existence of the action and the doubts as to defendants' title, they would not have invested in the securities or loaned money to the corporation. Finally, plaintiffs allege that the securities were not worth what they paid for them at the time of their purchase because of defendants' acts of fraud in not informing plaintiffs of the pending action.

Defendants, in addition to the above-listed facts numbered 1 through 12, allege that plaintiffs had personal knowledge of the Stormville Mountain Acres, Inc. action prior to the mailing of the letter of April 30, 1956. Furthermore, it is claimed by defendants that plaintiffs neither relied on the statements in the letter prospectus nor were induced to purchase the corporation's securities because of it. Defendants also allege that the securities and indebtedness held by plaintiffs were worth what they paid for them when they were purchased and that plaintiffs suffered no injury or damage and certainly none because of any alleged misrepresentations by defendants.

The parties are in dispute as to the following facts:

a) Whether plaintiffs learned of the Stormville Mountain Acres, Inc. action prior to April 30, 1956;

b) Whether plaintiffs were misled or deceived by the omission of reference to the action in the letter prospectus of April 30, 1956;

c) Whether plaintiffs when investing in the corporation relied upon the belief that no such action had been brought and whether such fact was material to plaintiffs' investments in the corporation;

d) Whether plaintiffs' investment when made and indebtedness when created were equal in value to the amounts invested and loaned;

e) Whether on April 30, 1956, defendants had good and marketable title to the property on which "Lost Village" was located and whether they had knowledge of any defects in their title;

f) Whether plaintiffs' injury or damages, if any, was caused by the alleged fraud and misrepresentations of the defendants.

■■ A party injured by a violation of Section 10(b) of the Securities and Exchange Act of 1934 has a civil cause of action against a party violating the statute. Pfeffer v. Cressaty, 223 F.Supp. 756 (S.D.N.Y.1963). "Section 10(b), to be sure, does not explicitly authorize a civil remedy. Since, however, it does make 'unlawful' the conduct it describes, it creates such a remedy." Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951). Such a cause of action exists even if the securities involved are those of a closely held corporation and the securities transactions are private, "as long as the jurisdictional requirements as to the use of the mails and instrumentalities of commerce are satisfied." Schine v. Schine, 250 F.Supp. 822, 823 (S.D.N.Y.1966), appeal dismissed, 367 F.2d 685 (2d Cir.1966); Kane v. Central Am. Mining & Oil, Inc., 235 F. Supp. 559 (S.D.N.Y.1964).

■■ When there has been a violation of Section 10(b) and Rule 10b–5, the injured party may recover "any loss proximately resulting therefrom." Smith v. Bear, 237 F.2d 79, 88 (2d Cir. 1956). Civil liability has been implied from violations of legislative enactments, however, "only when the injury claimed has been caused by that violation." Barnett v. Anaconda Co., 238 F.Supp. 766, 771–772 (S.D.N.Y.1965). Absent some connection between the alleged violation and the injury claimed, the alleged statutory violation does not necessarily give rise to a federal right of action. Id. at 770.

■■ Causation is a question of ultimate fact and, therefore, is a material fact issue both in cases seeking recovery for violations of Section 10(b) and in tort actions for fraud. List v. Fashion Park, Inc., 340 F.2d 457, 463 (2d Cir. 1965), cert. denied, 382 U.S. 811, 86 S. Ct. 23, 15 L.Ed.2d 60 (1965), rehearing denied, 382 U.S. 933, 86 S.Ct. 305, 15 L. Ed.2d 344 (1965). "In order for a valid claim to exist deception alleged must have had some causal relationship to the injury for which redress is sought." Barnett v. Anaconda Co., supra, 238 F. Supp. at 776. Here, there is a genuine issue as to this material fact of connection and causation of the wrong and injury, even if one accepts the allegations of statutory violation and the present worthlessness of plaintiffs' securities and indebtedness.

An essential element of recovery for a violation of Section 10(b) is proof of "deception—that is to say fraudulent conduct—by way of affirmative misrepresentation or omission of material facts." Id. at 775. It is failure to "state a material fact, which, in the light of all the circumstances, is necessary to make other facts stated not misleading" which is a violation. Smith v. Bear, supra, 237 F.2d at 87.

■■ Materiality of a fact is defined to be those facts to which a reasonable man would attach importance in determining his choice of action in the transaction in question. List v. Fashion Park, Inc., supra, 340 F.2d at 462. " 'Materiality' encompasses those facts 'which in reasonable and objective contemplation might affect the value of the corporation's stock or securities * * *' Kohler v. Kohler Co., 319 F.2d 634, 642, 7 A.L.R.3d 486 (7 Cir.1963)." Ibid. "The proper test is whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact." Id. 340 F.2d at 463. Here there is a dispute as to whether knowledge of the action would be material to the plaintiffs' determination of whether or not to invest.

■ In addition to the materiality of the fact misrepresented or omitted, in order to have a good cause of action for violation of Section 10(b) or for fraud, it is essential that the plaintiffs prove that there was a reliance on defendants' statements. Janigan v. Taylor, 344 F. 2d 781 (1st Cir.1965), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); List v. Fashion Park, Inc., supra; Sager v. Friedman, 270 N.Y. 472, 1 N.E.2d 971 (1936). "In order to recover for a violation of § 10(b) and Rule 10b–5, it is necessary for the plaintiff to show that the untrue statements 'influenced' (see List v. Fashion Park, Inc., 340 F.2d 457, 463 (2 Cir. 1965)), or 'induce[d]' (see Smith v. Bear, 237 F.2d 79, 88 (2 Cir. 1956)), him to purchase the stock." Rosen v. Bergman, 40 F.R.D. 19, 22 (S.D.N.Y.1966). "A false representation does not, without more, give rise to a right of action, either at law or in equity, in favor of the person to whom it is addressed. To give rise, under any circumstances, to a cause of action, either in law or equity, reliance on the false representation must result in injury. The essential constituents of the action are tersely and adequately stated as representation, falsity, *scienter*, deception and injury.' (Ochs v. Woods, 221 N.Y. 335, 338, 117 N.E. 305)." Sager v. Friedman, supra, 270 N.Y. at 479, 1 N.E.2d at 973.

■ From the affidavits and other proofs offered by the parties to this dispute, this court concludes that there is a genuine issue of fact as to whether plaintiffs relied on the representations in defendants' letter that this was "a good safe venture" and "now you know as much about it as we do." Since reliance is a fact material to the maintenance of plaintiffs' causes of action and as to this fact the parties' affidavits and proof show that there is a genuine issue, the determination of this issue must await trial.

■ The parties here are also genuinely in dispute as to whether plaintiffs' investment, when made, and

indebtedness, when created, were equal in value to the amounts invested and loaned. Plaintiffs allege that because of the ejectment action the investments were not nearly worth what was paid for them, whereas financial reports in the corporation's minutes as to the book value of the securities show that it was worth more than what was paid. Since the damages in a fraud case where, by fraud, one is caused to buy something that one would not have bought or would not have bought at that price "are to be reckoned solely by 'the difference between the real value of the property at the date of its sale to the plaintiffs and the price paid for it, with interest from that date, and, in addition, such outlays as were legitimately attributable to the defendant's conduct, but not damages covering "the expected fruits of an unrealized speculation."' Sigafus v. Porter, 1900, 179 U.S. 116, 125, 21 S.Ct. 34, 37, 45 L.Ed. 113.", Janigan v. Taylor, supra, 344 F.2d at 786, this issue must be settled on trial rather than by summary judgment.

In addition to the above discussed issues which must await determination by trial, the parties are also in dispute as to whether defendants had good and marketable title to the property on which "Lost Village" was located and whether they had knowledge of any defects in their title. These issues go to the essential constituent elements of falsity and *scienter* that must be established in a fraud action and, therefore, should await trial.

For the above stated reasons, there appearing to be genuine issues as to material facts which prohibit this court from granting judgment to either party as a matter of law, plaintiffs' motion for partial summary judgment and defendants' motion for summary judgment are denied. The court concludes that the facts above-numbered 1 through 12 are without substantial controversy, and that the facts designated as a) through f) are actually and in good faith controverted. Rule 56(d), Fed.R.Civ.P.