ERNEST F. CARLSON CO. *vs.* FRED T. LEY & CO. INC.

Hampden.    September 19, 1929. — November 27, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Deceit.    Corporation,* Rights of stockholders.

A first count in a declaration in an action of tort by one corporation against another contained allegations in substance merely that the owner of real estate, which had become subject to a mechanic's lien in favor of the plaintiff by reason of the plaintiff's excavating and laying the foundation for a building on the land, made a contract in writing with the defendant for the erection of a building on the land, and the financing of the enterprise by the procuring of a mortgage and the organization of a new corporation to acquire title to the property and to improve it; that the defendant then made a contract in writing with the plaintiff which incorporated the contract with the owner, provided for the release of the plaintiff's lien, the issue to the plaintiff of all the preferred stock of the new corporation to be formed by the defendant, and that the defendant might make a contract with the new corporation for the erection of the building and receive thereupon an assignment of the proceeds of the financing mortgage and all the common stock of the new corporation; that to induce the plaintiff to make such a contract the defendant falsely represented as its estimate of the cost of the new building a sum vastly larger than what it knew would be its maximum cost; represented that its intention was to receive from the transaction only a reasonable builder's fee, not more than seven per cent of the cost of the building, whereas it intended to realize and did realize an unconscionable profit, far in excess of such seven per cent; and further represented that it intended to retain the common stock of the new corporation and to manage and financially support it for a period of years; that the plaintiff believed such representations and relied on them; that the defendant, after completing the building at a cost far less than the estimate, took all the proceeds of the mortgage, left the new corporation with no funds, gave it no further financial support, and rendered the plaintiff's preferred stock worthless. A demurrer was sustained. *Held,* that

(1) The alleged statement of the defendant as its estimate of the

cost of the building was promissory in its nature, and was not actionable;

(2) The statement by the defendant that it intended to receive only a reasonable fee, to be not more than seven per cent of the cost of the building, formed no basis for an action of tort, there being no allegation that the defendant made a false representation as to its intent with reference to the contractual relations provided for by the agreement entered into;

(3) The words "financially support" being of such general and indefinite meaning that the plaintiff would not be justified in placing reliance upon them, and the defendant's representation that it intended to manage and financially support the new corporation for a period of years being promissory in nature, that representation formed no basis for an action of tort.

Further allegations of a second count in the declaration above described were in substance that, in joining the enterprise with the plaintiff and the owner after the plaintiff had placed a lien on the land, the president and treasurer of the defendant professed to be actuated by motives of personal friendship for the principal stockholder of the plaintiff and to desire only a reasonable profit for his corporation for its services in the matter. A demurrer was sustained. *Held,* that the allegations as to a joint venture and as to the representations of friendship for the plaintiff's principal stockholder made by the president and treasurer of the defendant did not establish a fiduciary relationship and were not such as to give rise to a right of action in tort.

The plaintiff in the action above described could not maintain the action on allegations of breach of duty by the defendant to the new corporation or its stockholders: such a suit should be brought on behalf of that corporation.

TORT OR CONTRACT, with a declaration described in the opinion. Writ dated March 4, 1929.

The defendant demurred to the declaration. The demurrer was heard by *Greenhalge,* J., and was sustained. The plaintiff appealed.

*P. Nichols,* (*C. E. Bell* with him,) for the plaintiff.

*C. G. Gardner,* for the defendant.

SANDERSON, J. The plaintiff appealed from an order of the Superior Court sustaining a demurrer to its declaration in three counts. The appeal in so far as the third count is concerned has not been argued and is treated as waived. The action is stated to be in contract or tort but, as there are no allegations to support an action for breach of contract, the only question is whether it can be maintained as an action of tort.

The first count states in substance that in 1926, two

persons named Keeler, being the owners of a parcel of land which had been the site of a hotel in Albany, New York, leased the land to a hotel corporation by perpetual lease conditioned on the payment of a specified ground rent. One Ernest F. Carlson owned the majority of the stock of this hotel corporation and also of the plaintiff corporation. These two corporations entered into a contract whereby the plaintiff undertook to erect a hotel building on the site. In pursuance of this contract it had expended more than $150,000 in excavating and laying the foundations for a building, when the Keelers had controversies with the hotel corporation, thereby preventing the performance of further work, and the plaintiff filed a mechanic's lien under the New York law for the labor and materials furnished. The Keelers then entered into a contract with the defendant which provided for the sale of the hotel site to the defendant if certain conditions were fulfilled, for the erection thereon of a five-story office building containing at least one million, two hundred thousand cubic feet in accordance with plans and specifications to be approved by the Keelers, for the financing of the building by a first mortgage for $850,000, and for the organization by the defendant of a new corporation to acquire title to the premises and improve the same. At a later date the defendant entered into a contract with the plaintiff which referred to and incorporated the earlier contract, and provided for the cancellation and release of the mechanic's lien filed by the plaintiff and for the execution of other papers, for the delivery to the plaintiff of the entire issue of preferred stock of the corporation to be formed which, it was agreed, might enter into a contract with the defendant for the construction of the building described in the first agreement and might compensate it by the assignment of the proceeds of the building loan mortgage for $850,000 and by the issuance of its common stock to the defendant, out of which certain specified payments were to be made.

The plaintiff alleges that the defendant, to induce the plaintiff to execute the contract with it, and to release the

plaintiff's mechanic's lien and its cause of action, made false representations to the plaintiff, stating that the defendant's estimate of the cost of the new office building in addition to the work already done by the plaintiff was at least $700,000; that it was the defendant's intention to receive from the transaction only a reasonable builder's fee for its services; that such fee would amount to seven per cent of the actual cost of completing the building; that it was its intention to retain all of the common stock of the corporation to be organized and to manage and financially support that corporation until January 1, 1933, when in fact the defendant knew the cost of erecting the building on the foundations laid would not exceed $425,000, and it intended to make an unconscionable profit out of the transaction and to abandon the building and financial support as soon as the building was complete; that the plaintiff believed and relied on the false representations and believed the preferred stock would be of substantial value, and was thereby induced to execute and did execute the proposed contract and complied with the obligations thereby imposed upon it, all to its damage in the loss of its cause of action; that the new corporation was organized and the stock issued according to the contracts, and the land conveyed to this corporation, which raised $850,000 by a building loan mortgage upon the premises and the defendant completed the building at a total cost of not more than $425,000; that after making the payments specified amounting to no more than $217,000, the defendant, through its control of the common stock of the corporation, caused the latter to pay over to the defendant the remainder of the money, leaving the new corporation with no funds, and that the defendant has refused to give that corporation further financial support, or to pay interest on either the building loan mortgage or the purchase money mortgage, or the taxes.

In the second count, after stating the facts leading up to the placing of a mechanic's lien on the property by the plaintiff, it is alleged that at this time, when it appeared that the enterprise might result disastrously to all parties,

agreements were entered into by the plaintiff, the defendant and the Keelers by which the parties undertook to complete the building as a joint adventure to the common advantage of all parties; that in joining this enterprise the president and treasurer of the defendant professed to be actuated by motives of personal friendship for Carlson and to desire only a reasonable profit for his corporation for its services in the matter; that in pursuance of this joint adventure the Keelers entered into the contract with the defendant, and the plaintiff and the defendant entered into their contract; that the new corporation was thereafter organized and its stock issued in accordance with the contracts; that the defendant, contriving and intending to secure for itself all the profits of the joint adventure, in disregard of its duty to the other parties to the common enterprise, although it well knew that the office building could be completed for a cost not in excess of $425,000, and that all the payments specified in the contract of December 29, 1927, would not exceed $217,000, caused the new corporation which it controlled to raise the sum of $850,000 by a building loan mortgage upon the premises; that after completing the building the defendant caused the new corporation to turn over to it all the funds remaining in the treasury of the corporation amounting to over $200,000 and refused to give the new corporation any further financial support, and as a result the defendant has acquired an unconscionable profit from the joint enterprise, and the plaintiff has lost all that it contributed thereto.

There was no contention by the plaintiff that the contract was executed by it by reason of any "fraud or misstatement as to the nature" of the contract signed "or of any fraud or misstatement as to the meaning" of the executed agreement, and there is no contention that any statement in the written agreement is not true or that the defendant has failed to comply with any of its terms. *DePasquale* v. *Bradlee & McIntosh Co.* 258 Mass. 483, 487. *Bowditch* v. *E. T. Slattery Co.* 263 Mass. 496. The writing in the case at bar shows on its face that it was intended to include the whole agreement. It comprises all

that is necessary to constitute a contract. In such a case "it is presumed that they [the parties] have placed the terms of their bargain in this form to prevent misunderstanding and dispute, intending it to be a complete and final statement of the whole transaction." *Glackin* v. *Bennett,* 226 Mass. 316, 319. The relief sought by the plaintiff is based upon an affirmance of the contract. It received and retains the full consideration which it agreed to accept for what it gave up. *Ginn* v. *Almy,* 212 Mass. 486, 493.

A statement by the defendant of its estimate of the cost of a new office building is an immaterial and collateral matter apart from some binding agreement to erect a building for the estimated price. When the statement was made so much was unknown concerning the kind of building to be constructed that neither party could have understood that the estimate was a statement of an existing fact upon which the other party was justified in placing reliance. *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437. *Thomson* v. *Pentecost,* 206 Mass. 505. *Boston Consolidated Gas Co.* v. *Folsom,* 237 Mass. 565. The plans and specifications were not in existence, and when prepared they were to be subject to the approval of the Keelers. When the estimate was made no one could tell what plans and specifications would be approved. The cost of the building to be erected would also be dependent upon the terms of the contract which a corporation not then formed might be willing to execute. Both parties must have known that they would be bound by their contract, whether the building cost less or more than the estimate. A statement promissory in nature "is not properly a representation, but a contract." *Dawe* v. *Morris,* 149 Mass. 188, 191. *Knowlton* v. *Keenan,* 146 Mass. 86.

It appears from the allegations that the plaintiff had the earlier contract for constructing a building for the hotel corporation, and there is nothing to show that the defendant was in a better position than the plaintiff to estimate the cost of a five-story building to be erected upon the constructed foundation with no facts as to the material

of which it was to be constructed or any of its architectural features, and with no further fact concerning it then known except that it was to have at least a stated cubic content. *Milliken* v. *Thorndike*, 103 Mass. 382, 385. A statement that the defendant intended to receive only a reasonable builder's fee could not in itself be the basis of an action for deceit, and the remaining part of this representation, that such fee would amount to seven per cent of the actual cost of the completed building, could not properly be relied upon as a false representation for the reason that no one could then know what the actual cost would be, and for the further reason that in so far as the statement is a promise that the defendant would charge only a reasonable fee to be no more than seven per cent of cost there can be no recovery based on such promise unless incorporated in the contract. The allegation of intent as to the builder's fee to be received was also promissory in nature. The count does not allege that the defendant made a false representation as to his intent with reference to "the contractual relations provided for by the agreement entered into." *Loughery* v. *Central Trust Co.* 258 Mass. 172, 178.

The representation that the defendant intended to manage and financially support the new corporation until January 1, 1933, was essentially promissory in nature, and the words "financially support" are of such general and indefinite meaning that the plaintiff would not be justified in placing reliance upon them. The case is distinguishable in its facts from *Feldman* v. *Witmark*, 254 Mass. 480.

So far as the second count is concerned, we are of opinion that the allegations as to a joint venture and as to the representations of friendship for Carlson made by the president and treasurer of the defendant do not establish a fiduciary relationship and are not such as to give rise to a right of action in tort. *Busiere* v. *Reilly*, 189 Mass. 518, 521. The case is distinguishable in its facts as well as in the nature of the remedy sought from *Reed* v. *A. E. Little Co.* 256 Mass. 442. It does not appear that the defendant received for its compensation for the erection of the building more than the agreement with the plaintiff stipulated that it should receive.

The plaintiff cannot maintain this action on its allegations of breach of duty by the defendant to the new corporation or its stockholders.   In so far as the damages alleged in the two counts consist of the wrongful taking of money from the new corporation or wrongfully failing to lend financial support to it, they are recoverable, if at all, in a suit by or in behalf of the corporation and not in an action at law by a stockholder in his own behalf.   *Converse* v. *United Shoe Machinery Co.* 185 Mass. 422.

*Order sustaining demurrer affirmed.*