CLINTON E. BELL *vs.* FRED T. LEY & CO., INC. & another.

Hampden.      September 17, 1931. — January 2, 1932.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Fraud. Corporation,* Officers and agents. *Contract,* Validity.

In a suit in equity, brought by the holder of shares of preferred stock of a corporation in behalf of himself and of all stockholders of the corporation against that corporation and a contractor corporation which had entered into a contract with it for the construction of a building, it appeared that the first corporation was formed under a contract between the contractor corporation and others for the reorganization of an abandoned enterprise involving a proposed building and the satisfaction of certain debts relating thereto, it being a part of such contract that the contractor corporation should build a new building for the new corporation; and that the contractor corporation had made its own employees directors of the new corporation. The plaintiff contended that the directors of the new corporation were at all times under the direction and control of the contractor corporation and acted in disregard of their fiduciary relation to the stockholders of the new corporation; that the construction contract was improvident; that the contractor corporation itself as promoter and owner of the voting stock of the new corporation had a fiduciary duty to the plaintiff and other owners of the preferred stock thereof and violated that duty by entering into such improvident contract; that, because of the grossly excessive and unreasonable contract price for the new building, the contractor corporation obtained a secret and excessive profit; that the terms of such construction contract were so indefinite that it was unenforceable; and that the contractor corporation had agreed to support the new corporation financially until a certain date; and the plaintiff sought to recover for the new corporation the difference between the amount received by the contractor corporation and fair compensation. A judge who heard the case on evidence oral and documentary, taken and reported under G. L. c. 214, § 24; Equity Rule 29 (1926), found that no fraud nor deceit was practised nor false representation made by any one representing the contractor corporation; that no contract was made by it with

any one to stand by, support financially or carry on the business of the new corporation until the date named by the plaintiff; and refused to find that the building contract entered into by the contractor corporation with the new corporation was unreasonable or that the directors of the new corporation failed to exercise sound discretion or good faith. A decree was entered dismissing the bill. The plaintiff appealed. Upon a review of the testimony and findings by the judge, it was *held*, that

(1) The findings by the judge could not be disturbed;

(2) The offer and vote of acceptance as to the construction contract between the new corporation and the contractor corporation indicated that the parties intended to and did enter into a binding contract, and its provisions were not so indefinite as to make the contract unenforceable;

(3) The mere facts that the directors of the new corporation were employees of the defendant and were elected directors by its vote did not require as a matter of law a finding that they were so far under its control that they did not exercise an independent judgment as directors in voting that the new corporation enter into the contract with the contractor corporation, nor did they require a finding that the contractor corporation had assumed or could be charged with the fiduciary duties which directors of the new corporation had;

(4) The evidence warranted a finding that the construction contract was not unreasonable and that the directors of the new corporation in entering into it did not fail to exercise sound discretion and good faith;

(5) The directors of the new corporation in deciding whether they would accept the offer of the contractor corporation were justified in taking into consideration the terms of the contracts which led to the organization of the new corporation and the obligations which the several parties thereto had assumed;

(6) The contractor corporation not being a director of the new corporation, there was no merit in a contention that, as the holder of the common stock thereof, it violated any obligation to the new corporation by entering into a contract with that corporation, whose directors were found to have exercised sound discretion and good faith in the matter;

(7) The mere fact that the contractor corporation made large profits did not require that the contract it made with the new corporation be set aside, the directors of the new corporation having been found to have acted with sound discretion and in good faith;

(8) The contractor corporation violated no duty it owed the new corporation or its preferred stockholders in entering into the contract, and the plaintiff had failed to establish a right in the new corporation to any part of the profits growing out of the transaction;

(9) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on February 27, 1929, and afterwards amended, by Clinton E. Bell, "suing on behalf of himself and all other stockholders of

Broadway-Maiden Lane Corporation" against Fred T. Ley & Co., Inc., and Broadway-Maiden Lane Corporation.

Material allegations of the bill were:

"4. The directors of the defendant owner, Broadway-Maiden Lane Corporation, acting under the control and direction of the defendant contractor, Fred T. Ley & Co., Inc., caused it to enter into a purported contract with the defendant contractor whereby the said defendant contractor undertook to erect the building (described in the opinion) in accordance with certain plans and specifications, and the defendant owner undertook to compensate the defendant contractor therefor in the amount of $850,000 less the following items — the sum of $140,000 which was required to be paid to the former owners of the Keeler Hotel Site in accordance with the provisions of the contract, the fee of the architect for the new building, which fee, upon information and belief, is alleged to have been the sum of $25,000, the amounts necessary to pay two quarterly instalments on a purchase money mortgage and interest for six months on a building loan mortgage, the total of which interest charges was the sum of $36,500, and the expense of securing the building loan mortgage, which expense upon information and belief, was alleged to have been the sum of approximately $15,500; that the total of such deducted items was the sum of $217,000, which left the sum of approximately $633,000 as the compensation to the defendant contractor for the construction of said building.

"5. That said purported contract described in the last preceding paragraph was invalid because of the following reasons:

"a. That the provisions of said purported contract whereby the defendant contractor was to be compensated in the amount of approximately $633,000 were unfair and unreasonable to the defendant owner and that said amount was grossly excessive as compensation to the defendant contractor, all of which facts were known at and before the making of said contract by the defendant contractor and the directors of the defendant owner, actually acting therein as the agents and tools of the defendant contractor.

"b. That the said directors, notwithstanding the fiduciary relation in which they stood, as such directors, toward the defendant owner violated the duty they owed to said defendant owner to conduct its affairs in good faith for its best business interests, and knowingly, and at the instigation and direction of the defendant contractor, agreed in behalf of said defendant owner to compensate said defendant contractor in a grossly excessive amount, and thereby so wasted the cash assets of the defendant owner that it was necessarily apparent to said directors and defendant contractor that the defendant owner would not and could not have the cash assets which would be necessary to pay the mortgage interest, taxes and other overhead charged upon said building until the proceeds from operation or sale of the completed property should be available to meet said charges and that their said action therefor practically assured the failure of the enterprise of said defendant owner.

"c. That said defendant contractor interfered with the proper exercise by said directors of the fiduciary obligations they owed to the defendant owner, and so controlled and directed their action as such directors that their action in agreeing to a price, which was grossly excessive, was merely a device adopted by them collusively with the defendant contractor whereby they agreed to turn over to the defendant contractor all the available cash assets of the defendant owner under the pretence that such cash was all paid as compensation for said construction work, but that such agreement was consciously and in bad faith made without any regard to a fair and reasonable price for said work.

"d. That by reason of the facts hereinabove alleged, said purported contract was in fact and in law no contract for the reason that the same party, Fred T. Ley & Co., Inc., the defendant contractor, by and through its agents actually acting for it however otherwise they purported to act, was the real and controlling party on both sides of said purported agreement.

"e. That Fred T. Ley & Co., Inc., the defendant con-

tractor, as the holder directly or indirectly of a majority of the voting stock of the defendant owner, as the stockholder who caused the election of said directors, stood in a fiduciary relation to said defendant owner and to the other stockholders thereof, and that said defendant contractor violated the obligations of such fiduciary relation, in that it exercised its control of said directors and caused them to contract with it for said defendant owner and agree to pay it grossly excessive compensation and to turn over to it all the cash assets of said defendant owner, in disregard of the latter's property rights and to the then apparent great detriment to said defendant owners' prospect of success in its venture.

"6. That this plaintiff is informed and believes and thereupon alleges that fair and reasonable compensation to said defendant contractor for the construction of said building was the sum of to-wit $450,000, and that accordingly $183,000 of the sum paid therefor was excessive.

"7. That said defendant contractor has since the first of the year 1929 substantially completed said building, and that the defendant owner has paid the defendant contractor all amounts agreed to be paid by it in accordance with the terms of said purported contract, and otherwise done and performed all things encumbent on it to be performed under and by virtue of the provisions of said purported contract with said defendant contractor."

Prayers in the bill were:

"1. That the court should determine and decree the liability of said defendant Fred T. Ley & Co., Inc., to the Broadway-Maiden Lane Corporation.

"2. That for the purpose of preserving the assets of the Broadway-Maiden Lane Corporation from further misappropriation and for the purpose of recovering for the benefit of its stockholders as far as possible such portions of its assets in Massachusetts as have been disposed of fraudulently, and without consideration, or of which they have been otherwise unlawfully dispossessed, and for the purpose of receiving the proceeds of this action, one or more suitable persons be appointed interlocutory receiver of the

assets, effects and credits of said Broadway-Maiden Lane Corporation, to preserve the same until the final decree herein, with all the powers conferred by law and with such other powers as to the court shall seem meet; and that said receiver be continued in the final decree to carry the same into effect."

The suit was heard by *Whiting,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material facts found by him are stated in the opinion. By his order a final decree was entered dismissing the bill. The plaintiff appealed.

*P. Nichols,* (*C. E. Bell* with him,) for the plaintiff.

*C. G. Gardner,* (*W. V. Baldwin* with him,) for the defendants.

SANDERSON, J. Two men by the name of Keeler, herein referred to as the Keelers, owned a parcel of land in Albany, New York, which they leased in perpetuity to the Admiral Hotel Company, a corporation, in which Ernest F. Carlson owned a majority of the stock. He was likewise owner of a majority of the stock of the Ernest F. Carlson Co., herein referred to as the Carlson Company, a corporation engaged in the business of general contracting and building. The Admiral Hotel Company made a contract with the Carlson Company for the erection of a hotel upon the land to which it held the leasehold title. Before the work progressed beyond the completion of the foundation, upon which the Carlson Company had expended about $150,000, controversies arose between the Keelers and the hotel company, as a result of which the Carlson Company stopped work and filed a claim for mechanic's lien, and creditors of the Carlson Company filed an involuntary petition in bankruptcy against that corporation. A representative of certain creditors endeavored to make some arrangement by which the building could be completed and the Carlson Company paid for what it had expended. Negotiations then began between the Keelers, the Carlson Company and Fred T. Ley & Co., Inc., herein referred to as the defendant, which led to two contracts in writing, one between the Keelers

and the defendant, dated December 22, 1927, and the other between the Carlson Company and the defendant, dated December 29, 1927. The provisions of these contracts are described in *Ernest F. Carlson Co.* v. *Fred T. Ley & Co. Inc.* 269 Mass. 272.

Both agreements contemplated the organization of a corporation by the defendant to acquire title to the property in Albany and erect and complete a building thereon and, when the conditions of the agreement were met, the placing upon the property of a purchase money mortgage for $870,000, which should be subordinate to a first mortgage for not less than $850,000, on terms satisfactory to the defendant. They also provided that the Keelers should receive $140,000 in cash on delivery of the deed and that the new corporation would cause to be erected on the premises and completed with reasonable diligence a five-story office building with one million, two hundred thousand cubic feet of space, in accordance with a general description in a schedule annexed, and in accordance with further plans and specifications to be prepared by the defendant and approved by the Keelers before the delivery of the deed. The undertaking was also made in behalf of the new corporation that none of its officers should be entitled to or receive compensation for services until a specified date, except under certain conditions. The contract with the Carlson Company, executed by that company with the approval of the plaintiff as its general counsel, referred to and incorporated the Keeler contract, and provided that, in consideration of the assignment to the defendant of the Keeler contract, the certificates for the entire issue of preferred shares of the new corporation, without immediate voting power, of a total par value of $150,000 should be delivered to the Carlson Company, its successors or assigns, the defendant not assuming any responsibility for the sufficiency of the consideration to the new corporation for the issuance of these shares. It was further provided that enough common stock should be issued to give the holders of it full power to elect the board of directors and control the management. The

preferred shares were to be preferred as to both assets and dividends, and to be entitled to cumulative dividends at the rate of six per cent per annum.  Provision was therein made for the delivery of such documents as would enable the Keelers to convey a marketable title to the property, and it was also agreed that the new corporation might enter into an agreement with the defendant for the construction of the building described in the agreement with the Keelers and compensate the defendant by the assignment of the proceeds of the building loan of $850,000 and the issuance of the common stock.  Out of the proceeds of the loan the defendant was to pay the Keelers $140,000 and pay other fees and charges therein specified.  The agreement was conditioned upon the approval of a sufficient number of creditors of the Carlson Company to make it effective as a composition agreement or upon approval of the bankruptcy court.  The approval of a majority of the creditors in number and amount was later obtained and the bankruptcy petition was dismissed.  The parties to these agreements seem to have assumed that the officers of the new corporation would issue stock and perform the other acts which by the terms of the two agreements were to be done by them.

Pursuant to the provisions of these two contracts the defendant caused the defendant Broadway-Maiden Lane Corporation, herein called the new corporation, to be organized under the laws of New York for the purposes contemplated by the two contracts previously made.  The certificate of incorporation was issued on January 19, 1928.  All common stock of the new corporation was issued to the defendant and later all preferred shares were issued to the nominees of the Carlson Company.  The Carlson Company discharged its mechanic's lien, and mutual releases were exchanged between the Keelers, the Admiral Hotel Company and the Carlson Company.  The Keelers conveyed the real estate to the new corporation for an agreed price of $1,010,000; of this $140,000 was paid in cash and the balance by a "purchase money" mortgage for $870,000; the mortgage was made subject to a construction loan bank

mortgage of $850,000, from the proceeds of which the $140,000 was obtained to make the cash payment to the Keelers. The new corporation executed both of these mortgages as mortgagor.

In November rough sketches for the proposed building had been prepared upon the basis of which estimates were made. More definite plans and specifications with typical floor plans in some detail and elevations, called preliminary specifications dated January 3, 1928, were approved by the Keelers on January 11, 1928, with the understanding, as stated in a letter by their counsel, that "in order to tie up the loose ends in the specifications . . . the building to be erected is to correspond in class and quality with the Fred T. Ley building in New York." A witness testified that the approval by the Keelers of the specifications submitted was on the condition that the building should be constructed in conformity to the specifications for the building in which the defendant had its offices in New York. The condition imposed by the Keelers was approved by the defendant. The testimony tended to prove that this requirement introduced a new element of cost, then suggested for the first time. At about the same time it was discovered that excavations which had been made without properly protecting the walls of the building on adjoining land might substantially increase the cost connected with the construction of the building on the Keeler lot. On February 3, 1928, the defendant made an offer to the new corporation, substantially in conformity to the terms of its contracts with the Keelers and the Carlson Company, to assign to it the defendant's rights under the contracts with the Keelers and the Carlson Company, to erect a building according to the plans and specifications approved by the Keelers, to give the guarantees called for by the contract, to make the payments required by those agreements for the issuance to it or its nominee of all the capital stock and to enter into a contract with the new corporation for the erection of the building for $710,000.

At a meeting of the directors of the new corporation held on February 3, 1928, its secretary having reported that the proposition and offer of the defendant had been submitted

to the stockholders and that they had recommended the acceptance of the same, a vote was passed that the corporation accepted the same and "hereby does accept the further offer of the said Fred T. Ley & Co. Inc. to enter into a contract with this corporation for the erection of said building upon said premises for the sum of $710,000, and that the proper officers of this corporation be and they hereby are authorized and directed to enter into such contract with the said Fred T. Ley & Co. Inc. for the erection of such building upon said premises for such sum of $710,000." One of the directors of the new corporation testified that the plans and specifications approved by the Keelers, and the only ones in existence when the new corporation voted to accept the offer of the defendant, were not final and complete, that more detailed plans would be prepared as the work progressed, that he had made estimates of costs on another building with a different set of plans. He testified that he then had no accurate knowledge of what the building would ultimately consist and very inaccurate knowledge of what it might cost. The treasurer of the defendant testified that up to the time the contracts with the Keelers and the Carlson Company were signed there were only sketches from which the cost could be approximated, that there were several factors which would affect the cost, the total of which might amount to fifteen or twenty-five per cent of the cost of the building. This testimony did not refer to the plans and specifications approved by the Keelers with the additional requirement made by them. Some time after the completion of the building the second mortgage on the property was foreclosed and the holders obtained a large deficiency decree against the new corporation.

The incorporators of the new corporation who later became its directors were employees of the defendant. Their names were Chuckrow, Manning and Rogers, the first two being respectively its president and its treasurer. Chuckrow had general charge of construction for the defendant in New York, and had in charge the construction of the building in question. Manning was in charge of accounting in the defendant's New York office and Rogers was

general superintendent for the defendant in the New York district. He is no longer in its employ. All three of these directors knew the terms of the contracts which the defendant had entered into with the Keelers and the Carlson Company. The new corporation had its offices with those of the defendant in New York and both corporations employed the same law firm.

It is not contended that the defendant did not erect a building in accordance with the plans and specifications approved, nor that the building failed to correspond in class and quality with the Ley building in New York, but the contention is made that the directors of the new corporation were at all times under the direction and control of the defendant and acted in disregard of their fiduciary relation to the stockholders of the new corporation, that the defendant itself as promoter and owner of the voting stock had a fiduciary duty to the plaintiff and other owners of the preferred stock and violated that duty by entering into an improvident contract, that because of the grossly excessive and unreasonable contract price the defendant obtained a secret and excessive profit, that proper plans and specifications were not submitted to the Keelers for approval, that no contract was entered into or if there was a contract its terms are so indefinite that it is unenforceable, and that the defendant had agreed to support financially the new corporation until January 1, 1933. The plaintiff seeks to recover for the new corporation the difference between the amount received by the defendant and fair compensation. The directors of the new corporation have not been made parties to this suit.

The trial judge found, in substance, that all parties interested, upon full consideration and for the purpose of accomplishing the objects they had in view, adopted the plan described in the three written contracts, that no fraud or deceit was practised or false representation made by any one representing the defendant, and that the three contracts embraced all contracts and agreements entered into by the parties. He did not find that the defendant made any oral or written contracts with any one to stand by, support

financially or carry on the business of the new corporation until January 1, 1933, and, taking into consideration the conditions existing at the time and the very incomplete plans and specifications then in existence, that the contracts were unreasonable or required the payment of excessive compensation. He did not give the request that if the approval of the plans and specifications of the building to be erected for the new corporation was obtained by the fraud of the defendant such approval was of no effect upon the rights of the Carlson Company or of those claiming through or under it, but stated in connection with this request that he did not find that the plans and specifications were obtained by fraud of the defendant. We interpret this finding to mean that he did not find the approval of the plans and specifications to have been so obtained. This decision of the trial judge, who heard oral testimony on this issue, cannot be disturbed. By obtaining the approval by the Keelers of the plans and specifications in the condition in which they were, with the added requirement on their part that the building should correspond in class and quality with the Ley building in New York, there was a sufficient compliance with the agreement made between the defendant and the Carlson Company and the Keelers that the defendant would submit plans and specifications to the Keelers for approval.

The trial judge ruled at the request of the plaintiff that the provision of the contract of December 29, 1927, between the defendant and the Carlson Company, with respect to compensation to be paid to the defendant for the construction of the building referred to in the contract is not to be construed as authorizing the directors of the corporation to be organized as provided in said contract to agree to pay the full amount of compensation named therein if said amount was unreasonable and in excess of fair compensation for the construction of the building actually contracted for, or as exonerating them from exercising sound discretion and good faith in protecting the interest of the corporation of which they were directors (see *Ernest F. Carlson Co.* v. *Fred T. Ley & Co.*

*Inc.* 269 Mass. 272, 277), but he stated that he did not find that the contract entered into with the new corporation was unreasonable or that the directors failed to exercise sound discretion or good faith. We are of opinion that the offer and vote of acceptance indicated that the parties intended to and did enter into a binding contract. We are also of opinion that its terms were not so indefinite as to make the contract unenforceable. The fact that the directors of the new corporation were employees of the defendant and were elected directors by its vote did not require a finding that they were so far under its control that they did not exercise an independent judgment in voting that the new corporation enter into the contract with the defendant, nor did it require a finding that the defendant had assumed or could be. charged with the fiduciary duties which directors of the new corporation had. It is apparent that the new corporation was to be organized in pursuance of the contracts as a convenient means of making effective the purposes which the parties to those contracts hoped to accomplish. The defendant bound itself by its agreements with the Keelers and the Carlson Company to do certain definite things among which was the erection of the building when the specified conditions were fulfilled. It also undertook in behalf of the corporation to be formed certain obligations in connection with taking title to the property and causing a building to be erected thereon, with the placing of first and second mortgages in specified amounts and making specified payments from the proceeds of the first and with the issuance of the preferred and common stock. The parties to the contracts entered into between the defendant and the Keelers and the Carlson Company evidently expected that the building to be erected would cost $710,000, that the new corporation would be organized by the defendant, that the defendant would see to it that officers of the new corporation would be so selected that they would receive no pay and that a building contract would be made between the new corporation and the defendant.

Evidence was introduced warranting the finding that

the contract with the new corporation was not unreason-
able and that the directors in entering into it did not fail
to exercise sound discretion and good faith. Two of the
three directors of the new corporation were competent
engineers and knew about building costs. The third, who
testified that he had no knowledge of such matters, said
that he relied on the knowledge of these two. One of
these two did not testify; the other supervised the mak-
ing of plans and specifications and made the various
estimates of costs. He testified that he reached the con-
clusion that the only thing for him to do as a director was
to comply with the terms of the contract the defendant
had made, that this contract was the first consideration,
but he also testified that he would have refused to go on
with the matter if it was not a fair and reasonable contract.
When asked if he exercised an independent judgment as
to the fairness and reasonableness of the contract he
said ". . . [he] couldn't help have a judgment about
it, having been on the thing, prepared all the figures,
supervised getting out the plans and all that went with it,"
that he took into consideration as he had a right to do the
new elements of costs introduced after the estimates made
in November, to which reference has been made. In the
absence of proof it cannot be assumed that the third
director, Rogers, acted in the matter without exercising
independent judgment. The directors of the new corpora-
tion in deciding whether they would accept the offer of
the defendant were justified in taking into consideration
the terms of the contracts which led to the organization
of the new corporation and the obligations which the several
parties thereto had assumed.

Although the new corporation issued the preferred stock
directly to creditors of the Carlson Company as its nom-
inees named by the present plaintiff acting in its behalf,
the transaction was in its legal effect like an issue of stock
to the Carlson Company and a distribution of that stock
by it among its creditors to meet its obligations to them.
The preferred stock was not issued to these creditors until
May, 1928, after the bankruptcy petition had been dis-

missed, but the certificates were dated February 3, 1928. If it be assumed that these creditors might have rights greater than or different from those of the Carlson Company, they were given notice in the letter, sent them by that company in February, 1928, and before they gave their assent, that it was doubtful if in bankruptcy creditors would get five cents on the dollar, that the efforts of the company successfully to promote a building on the Keeler property had resulted in an agreement with the defendant whereby it undertook to form a corporation to take title to the Keeler property and to erect a building thereon to be not less than five stories in height, the property to be subject to the two mortgages already described, that the new corporation was to deliver to the Carlson Company the entire issue of preferred stock limited to fifteen thousand shares of a par value of $10 each without voting power before January 1, 1933, that none of the officers of the new corporation was to receive compensation for services except in a certain event, that title to the property had been conveyed to the new corporation and that the defendant had started work on the construction of a five story and basement store and office building, that the contract between the Carlson Company and the defendant was based on the consent of a majority of the creditors in number and amount accepting this settlement and if a majority did not accept the offer the preferred stock would go to the trustee in bankruptcy, and that the Carlson Company offered its creditors a percentage of their claim payable in preferred stock of the new corporation. The creditors were also informed that if they desired verification of the facts stated in the letter they might apply to certain designated persons, among whom was their general counsel, the present plaintiff. So far as appears only one creditor asked for information and that was promptly given. The certificates of stock issued to creditors bore the names L. T. Manning, treasurer, and C. M. Chuckrow, president. The testimony of Manning would have warranted a finding that the Carlson Company, the plaintiff and the creditors all knew that the

directors of the new corporation were employees of the defendant.

Upon the facts found the defendant violated no duty of a fiduciary nature to the creditors of the Carlson Company who became the owners of preferred stock in May. It was not a director of the new corporation, and the contention cannot successfully be made that as the holder of the common stock it violated any obligation to the new corporation by entering into a contract with that corporation whose directors were found to have exercised sound discretion and good faith in the matter. As a general rule a stockholder has the same right to contract with the corporation that a stranger would have. *Revere* v. *Boston Copper Co.* 15 Pick. 351, 363. *Nye* v. *Storer*, 168 Mass. 53. In *Flint* v. *Codman*, 247 Mass. 463, 472, the court said: "The corporation is a legal entity separate and distinct from its stockholders. Commonly the stockholders of a corporation occupy no fiduciary relation to their fellow stockholders or to the corporation. The relation of a director to a corporation is fiduciary; yet transactions made in good faith, fair and for the interest of a corporation between it and its directors although scrutinized with great strictness may be authorized or ratified by vote of the stockholders under appropriate conditions."

There was evidence upon which the judge could find that the parties could not know when the contracts were signed whether the defendant would make a profit. It took all the chances of loss because of conditions which might arise while the building was being constructed. A large profit seems to have been made by the defendant, but the recovery of substantial profits by a contractor in and of itself is not ground for setting the contract aside. *Union Pacific Railroad* v. *Credit Mobilier of America*, 135 Mass. 367, 374. If the directors of the new corporation, whose conduct must be judged by conditions existing when the contract was made, exercised independent judgment and acted in good faith in the execution of the contract, and it must be assumed upon the findings that they did, no wrong was done

to the corporation of which it or the preferred stockholders can complain. Upon those findings the defendant has violated no duty it owed the new corporation or its preferred stockholders in entering into the contract, and the plaintiff has failed to establish a right in the new corporation to any part of the profits growing out of the transaction.

There was some testimony tending to prove that employees of the defendant received compensation in connection with their profit sharing agreements, but it did not appear that the contract in the case at bar was of that kind or that the directors of the new corporation received or were to receive any special pecuniary recompense in connection with it, and no employees of the defendant have been made parties.

No reversible error appears in the action taken by the trial judge on the plaintiff's requests for rulings, and we cannot say that his findings on any of the controlling issues in the case are clearly wrong.

*Decree affirmed with costs.*