### KEELER et al. v. FRED T. LEY & CO., Inc.
#### No. 2766.

Circuit Court of Appeals, First Circuit.
May 23, 1933.

MORTON, Circuit Judge, dissenting in part.

Claude B. Cross, of Boston, Mass. (Edward C. Park and Withington, Cross, Proctor & Park, all of Boston, Mass., and John B. Shea, of Springfield, Mass., on the brief), for appellants.

Herbert Parker and Robert G. Dodge, both of Boston, Mass. (Haven Parker, of Boston, Mass., Charles G. Gardner and William V. Baldwin, both of Springfield, Mass., and R. Ammi Cutter, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This action is based on deceit. It was first tried before a jury in the District Court of Massachusetts, and a verdict directed for the defendant. On appeal to this court the judgment of the District Court was reversed on the ground that there was evidence of deceit sufficient to go to the jury. 49 F.(2d) 872. It was then sent to an auditor to find the facts, with a stipulation that his findings of facts should be final. On the coming in of the auditor's report making findings that the false representations were made by the defendant as alleged, the plaintiffs filed a motion that judgment be entered for the plaintiffs. The District Court denied the plaintiffs' motion, and ordered judgment for the defendant. Exceptions were taken to the denial of the plaintiffs' motion.

The assignments of error involve the single issue of whether the plaintiffs, as a matter of law, were entitled to recover on the auditor's report.

Certain facts are undisputed: The plaintiffs in 1927 were the owners of a parcel of land located on one of the principal streets in the city of Albany, N. Y. The entire parcel was formerly occupied by a hotel which was burned in 1919.

After the fire the land remained unoccupied. In May, 1926, the plaintiffs executed a lease of the land to the Admiral Hotel Company, which was controlled by Ernest F. Carlson of Springfield, Mass. Carlson, through a corporation, the Ernest F. Carlson Company, also controlled by Carlson, began in 1926 the construction of a hotel on the land of the plaintiffs under lease, and completed the foundation. The Admiral Hotel Company then defaulted the payments due under the lease, and in June, 1927, the plaintiffs on ejectment proceedings again came into full ownership and possession of their land together with the foundations for a building. The Ernest F. Carlson Company, however, filed a mechanics' lien on the property, which was later released on a bond and the lien finally discharged in the New York court.

The plaintiffs then decided that their best course was to sell the land outright, but were willing, if a substantial purchaser could be found, who would erect a building on the foundations constructed by the Carlson Company, to make favorable terms as to payment of the purchase price.

In 1927 Fred T. Ley, then a resident of and with a business office in New York City, a successful builder and contractor, of wide experience in the construction and management of large office buildings, with other offices in Boston, Springfield, Florida, and South America, controlled the defendant corporation, which was organized in Massachusetts and which, under Ley's direction as president and general manager, had for many years been engaged in the construction of large buildings. The financial standing and business reputation of both the defendant and Ley were then of the best.

As a result of the efforts of one Behr, a real estate broker, the plaintiffs and the defendant, through Ley as its president and general manager, in 1927 entered into negotiations for the sale and purchase of the plaintiffs' land and the construction of a building thereon.

After several months of negotiations a contract was entered into, whereby the plaintiffs agreed to sell and the defendant agreed to buy the plaintiffs' land at an agreed price of $1,010,000, of which $140,000 was to be paid in cash, and a purchase-money mortgage in the principal amount of $870,000, subject to a prior mortgage of $850,000, was to be given to secure the bond of the defendant's assignee or nominee, payable in fifteen years. Under the agreement of sale the defendant agreed to erect and complete a five-story office building on the land, to contain 1,200,000 cubic feet of space, and according to plans and specifications to be approved by the plaintiffs, and to begin construction as soon as plans were approved and a loan of $850,000 secured by a first mortgage on the premises was obtained.

It was provided in the contract that the defendant would organize a subsidiary corporation, which would take title to the land

and execute the mortgages and carry out the "building loan agreement."

All the provisions of the contract as to construction of the building were finally carried out by the defendant, but the subsidiary company, organized by the defendant, and which was officered by employees of the defendant, as soon as the building was completed, defaulted in the payment of the installments and interest due on the mortgages and in the payment of the taxes for 1928. As a result the plaintiffs were obliged to foreclose the second mortgage, and purchased the equity at a foreclosure sale for the sum of $200,000. At the time of the foreclosure the building was not on a paying basis.

The plaintiffs in their declaration allege that they were induced to enter into this contract by certain false representations made by Ley in their negotiations, viz.: That he assured the plaintiffs that the building the defendant proposed to erect on the premises, according to the plans and specifications to be furnished the plaintiffs, would cost not less than $850,000; that there would be no profit for the defendant in that amount; and that it was the intent of the defendant to operate or manage the building direct or through a subsidiary until it was on a paying basis.

The defendant contends that since none of these alleged statements or promises were contained in the contract, as the contract must be presumed to contain the result of the negotiations, there was no error in awarding judgment for the defendant on the auditor's report.

This court, when the case was before it on the former appeal, 49 F. (2d) 872, laid down certain principles of law which must be held to be the "law of the case," Browne v. Thorn et al. (C. C. A.) 272 F. 950; Beiseker et al. v. Moore (C. C. A.) 174 F. 368; and therefore should have been applied by the District Court, if the facts found by the auditor warranted it: (1) It was not necessary to set forth in the contract the inducing representations that led either party to enter into it; (2) the case is to be governed by the law of New York; (3) fraud may consist in asserting a belief or an opinion when such belief or opinion is not entertained, and the assertion is made in bad faith and with a design to mislead and deceive; (4) that the parol evidence rule has no application to preliminary negotiations in an action for deceit in fraudulently inducing plaintiffs to enter a contract.

These principles are well sustained by the decision both in New York and in the federal courts. Adams v. Gillig, 199 N. Y. 314, 319, 322, 92 N. E. 670, 32 L. R. A. (N. S.) 127, 20 Ann. Cas. 910; Deyo v. Hudson, 225 N. Y. 602, 611, 612, 122 N. E. 635; Arnold v. National Aniline & Chemical Co. (C. C. A.) 20 F. (2d) 364, 56 A. L. R. 4; Rogers v. Virginia-Carolina Chemical Co. (C. C. A.) 149 F. 1–20; Mamaux v. Cape May Real Estate Co. (C. C. A.) 214 F. 757; Milliken-Tomlinson Co. v. American Sugar Ref. Co. (C. C. A.) 9 F. (2d) 809, 815; Vulcan Metals Co., Inc., v. Simmons Mfg. Co. (C. C. A.) 248 F. 853, 856.

In Rogers v. Virginia-Carolina Chemical Co., supra (C. C. A.) page 13 of 149 F., the court said:

"There is a prima facie presumption of fairness and honesty in the dealings of mankind, and, where one man makes a promise to another as an inducement for a change of position or other action on the part of the latter, he, if not expressly, impliedly avers that he has an existing intent to fulfill his promise, and such implied averment of existing intent is of matter of fact and, if false and fraudulent, is a fraudulent representation, which may or may not, according to circumstances, furnish the basis for an action ex delicto."

In Seven Cases v. United States, 239 U. S. 510, 519, 36 S. Ct. 190, 193, 60 L. Ed. 411, L. R. A. 1916D, 164, the court said:

"But state of mind is itself a fact, and may be a material fact, and false and fraudulent representations may be made about it."

Williston, in vol. 3, § 1496, of his work on Contracts, says:

"It is frequently said that a promissory statement cannot be the basis of an action for deceit; and a prediction of future events is at best a statement of opinion. It is undoubtedly true that failure to perform a promise cannot amount to fraud. And in many jurisdictions, without consideration of the question whether a promise was made with an intention not to perform it, it is held that the making of the promise cannot be an actionable fraud. It has been pointed out, however, that when a promise is made with intention not to perform it, the promisor is guilty of misrepresentation. And in a number of cases, generally of recent date, the doctrine seems broadly accepted that a promise which the promisor does not intend to carry out may be a misstatement of material fact."

The auditor found all the facts existed for the application of these well-established rules of law.

At the outset it should be borne in mind, as the auditor found, that the plaintiffs were not interested in contracting merely for the erection of a building on their land, which they would have to operate, but in the sale of their land to a responsible purchaser, which they became satisfied that the defendant would be.

The auditor found from the evidence before him that, at the beginning of the negotiations, Ley, representing the defendant, informed the plaintiffs or their counsel, Mr. Sanford, that he was not interested in constructing a hotel, as he knew nothing about operating a hotel, but had had experience in operating office buildings; that such a building as the Ley Building in New York, in which the negotiations took place, would cost approximately $850,000; that plans and estimates of the cost of the proposed building were being made, and if a first mortgage on the land and the proposed building could be obtained for $850,000, he would undertake the purchase of the land and the construction of a building substantially like the Ley Building; that the sum obtained by the mortgage would not contain any profit for the defendant, but the defendant expected to get its profit out of the operation of the building after construction.

That at the last conference with the plaintiffs before the contract was drafted, Ley told the plaintiffs, in reply to a question by John Keeler as to what the proposed building would cost, that they had the estimates of cost completed, and sent for them. They were placed before him, and after looking them over stated to Keeler, in the presence of Sanford, that the proposed building would cost more than $850,000. In response to a further question by John Keeler, Ley said there would be no profit to his company in that figure; that the defendant would own the building through a subsidiary company, and that its only hope of profit was in making the project a success; that the defendant would not go into it unless it expected to make it a paying proposition; that in order to carry the building along until it got rented, it would cost the defendant from $150,000 to $200,000. Keeler then asked what assurance the plaintiffs had that the defendant would "stay with us?" Ley replied that the defendant never had abandoned a project and he didn't think there was going to be any reason for abandoning this one; that from their studies they were willing to go with it.

From certain general findings of fact and the evidence before him, the auditor made the following specific findings of fact:

That the defendant, through Ley, told the plaintiffs, both directly and through their attorney, Sanford, in substance, that the building would cost at least $850,000; that the defendant had no expectation of making a profit on its construction; that the defendant expected to make its profit through its ownership of the common stock of the subsidiary which would own and operate the building; that these representations, when made, were knowingly false; that Ley knew when this statement was made that the completed estimates showed that the proposed building could be built for much less than $850,000 or even $710,000; that from the beginning the defendant expected to make a profit on the construction of the building out of the proceeds of the mortgage loan; and that at no time did the defendant intend or expect to depend for its profits on its ownership and operation of the completed building, either directly or through a subsidiary or otherwise.

The auditor also found that the plaintiffs believed that the defendant had made estimates showing that the cost of the building would be approximately $850,000, or at least $710,000; that the defendant did not expect or intend to derive any profit from its construction; that the defendant expected and intended to derive its profit solely from the ownership and operation of the completed building through a subsidiary; and that the plaintiffs relied on the defendant's representations as an inducement to enter into the contract; and that if they had not believed such representations to be true, they would not have sold their land and conveyed it to a financially irresponsible corporation, since, although they were anxious to make a sale, they desired to have the property stay sold and not come back on their hands again.

It is clear, we think, from the findings of the auditor, that the representations of the defendant, that the proposed building would cost to construct as much as the principal sum of the first mortgage, or at least $710,000, and that the defendant did not expect or intend to derive a profit from the receipt of the first mortgage loan, but from its ownership and operation of the building after completion, either directly or through a subsidiary corporation, were knowingly false, which representations upon which they relied gave the plaintiffs assurance that the result they desired would be achieved, and without such assurance they would not have entered into

the contract or conveyed their land to a financially irresponsible subsidiary of the defendant.

The defendant contends that the specific findings of the auditor were not warranted from his general findings. The auditor, however, does not say that he made his specific findings solely upon inferences from the general findings, but from the general findings and "the evidence before him." Nor is it clear that his specific findings were not warranted from his so-called general findings.

■ It is true that the plaintiffs could have, and for their protection should have, insisted on having these representations embodied in the contract. They did not do so, however, but chose to rely on the good faith and business reputation of the defendant and the statement of its agent, which they had a right to do. If the defendant made false statements to induce the plaintiffs to enter into the contract and the plaintiffs relied on them, it does not lie in the mouth of the defendant to complain because the plaintiffs saw fit to rely on them and did not require a written guarantee.

Counsel for the defense cites the case of Carlson Company v. Fred T. Ley & Co., 269 Mass. 272, 168 N. E. 812, which grew out of the same transaction as the present case. Upon the facts in that case the Massachusetts court held that those plaintiffs could not recover. That court found that the statements made to Carlson that the defendant intended to manage and financially support the subsidiary corporation for a period of years was promissory in nature and formed no basis for an action of tort; and that the estimated cost of the building would be $700,000 in addition to the foundation was merely an opinion; but the evidence shows that Carlson, who was a building contractor, knew that the building could be built for much less than $700,000; and that case evidently, from the opinion of the court, lacked the evidence from which the auditor in this case found that the defendant had no intent at the time the representations were made of, "staying with" the enterprise until it was on a paying basis; but the Massachusetts court recognized that if it had appeared that the defendant had no intent to operate the building when the statement was made, it might have been actionable, citing Feldman v. Witmark et al., 254 Mass. 480, 150 N. E. 329.

The auditor, therefore, found all the facts existed requiring an application of the rules of law laid down in the previous opinion of this court, viz.: That a knowingly false representation was made as to what the defendant's completed estimates showed the cost of the proposed building would be; that it falsely represented it did not expect to make any profit out of the construction of the building from the proceeds of the first mortgage after paying the plaintiffs $140,000; that it falsely represented that it intended to operate the building directly or through a subsidiary until on a paying basis, and that these false representations were material inducements for the plaintiffs to enter into the contract; and that the plaintiffs relied on them in entering into the contract for the sale of their land.

■ The facts found by the auditor being final, Marden v. Howard, 242 Mass. 350, 355, 136 N. E. 385; Lunn & Sweet Co. v. Wolfman et al., 268 Mass. 345, 349, 167 N. E. 641; David Lupton's Sons Co. v. Automobile Club of America, 225 U. S. 489, 494, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699, we think the law laid down in the previous opinion of this court required a judgment for the plaintiffs.

■ The District Court based its decision on the fact that since it was provided that the building was to be operated by a subsidiary corporation, and a provision that no salaries were to be paid the officers of that corporation, which the plaintiffs knew was without financial standing, therefore the plaintiffs must have abandoned their intent of a sale to some one who would make a success of the project, and assented to this inadequate protection of their interests instead. The District Court apparently overlooked the fact that Ley's assurance was that the defendant would operate the building either directly or through the subsidiary, and the auditor found that the defendant had no such intent when it gave this assurance. The fact that the officers were employees of the defendant does not necessarily indicate that the plaintiffs did not rely on the assurance of Ley that the defendant would operate the building until it was on a paying basis, either directly or through its subsidiary. But if the auditor found that the other alleged false representations were made and the plaintiffs relied on them, and the plaintiffs would not otherwise have entered into the contract, they were material representations as inducements for the plaintiff to enter into the contract, and may alone form the basis for an action of tort. Herein this case differs from the Massachusetts cases such as Loughery v. Central Trust Co., 258 Mass. 172, 154 N. E. 583, in which it is held that no action can be maintained on a

false promise, unless the loss is the necessary result of the alleged wrong, since an essential element of an actionable tort is missing. But see Feldman v. Witmark et al., supra; Weeks v. Currier, 172 Mass. 53, 55, 51 N. E. 416. Here the plaintiffs' loss is a direct result of the false representations, since the auditor found but for them the plaintiffs would not have entered into the contract.

The auditor made alternative findings of damages. The rule in New York and in the federal courts is that in case of fraudulent representation in a sale of property, the plaintiff is entitled to recover the difference between the value of what he gave up and what he received. In some states a plaintiff is entitled to receive the difference between what he gave up and what the value of the thing he received would have been if the representations had been true; but this case is governed by the law of New York, which does not differ from that recognized in the federal courts. Reno v. Bull, 226 N. Y. 546, 553, 124 N. E. 144; Ochs v. Woods, 221 N. Y. 335, 340, 117 N. E. 305; Urtz v. N. Y. C. & H. R. R. R. Co., 202 N. Y. 170, 174, 95 N. E. 711; Smith v. Bolles, 132 U. S. 125, 10 S. Ct. 39, 33 L. Ed. 279; Sigafus v. Porter, 179 U. S. 116, 21 S. Ct. 34, 45 L. Ed. 113; Nupen v. Pearce (C. C. A.) 235 F. 497, 501; Stelwagon Mfg. Co. v. Elvidge (C. C. A.) 30 F. (2d) 285, 286; Lauria v. E. I. Du Pont De Nemours & Co. (D. C.) 241 F. 687, 693; Slater v. Mexican Nat. R. R. Co., 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900.

The auditor found that the value of the plaintiffs' land which they conveyed was $900,000, and that they received in return $140,000 in cash and a second mortgage which he found was worth only $200,000, and that the damages were $560,000, although he found that the equity in the property at the time of the transfer was worth $550,000.

While no motion to recommit was made by the defendant, nor objection made to the findings of the auditor on the question of damages, the findings of the auditor on this issue, without the evidence before us on which they were based, are so unsatisfactory that we do not feel warranted in ordering a judgment based thereon. We think the case should be recommitted to the auditor to find the fair value of what the plaintiffs received for their land, viz., the cash payment and the value of the second mortgage based on such evidence as may be presented to the auditor. Assuming the false representations were made as alleged and as the auditor found, it is undisputed that the plaintiffs, under their contract with the defendant in consideration of the conveyance of their land to a subsidiary corporation of the defendant, received $140,000 in cash, a second mortgage for $870,000 given by this subsidiary corporation on the land occupied only by foundations built for another structure, and an agreement by the defendant to construct the proposed building thereon without a written guaranty that it would cost any definite amount, and the equity in which would, if and when constructed, be owned by a worthless corporation, and would be subject to a first mortgage of $850,000.

Whether all of these factors entered into the findings of the auditor on the issue of damages, we cannot tell from his report.

It is clear, we think, from the facts found by the auditor, that nominal damages cannot fairly compensate the plaintiffs for the loss suffered through the false representations of the defendant.

The judgment of the District Court is reversed, with costs of this court, and the case remanded to that court for further proceedings not inconsistent with this opinion.

MORTON, Circuit Judge (dissenting in part).

I concur in the present order. The auditor's finding that, though the equity in the land and building was worth $550,000, the value of the mortgage on it which was given to the plaintiffs and under which by foreclosure they acquired title to the equity about a year later was only $200,000, is too obviously unreasonable to be made the basis of judicial action.

I am, however, unable to agree with my brethren that the false representation by the defendant, that it intended to operate the building directly or through a subsidiary until on a paying basis, is actionable. In considering this point, certain additional facts should be borne in mind. The plaintiffs and the defendant were dealing at arm's length; there was no fiduciary relation between them; the oral negotiations were followed by a written contract of the most elaborate and formal sort, in the preparation of which both sides were represented by competent lawyers and the instrument was redrafted at least three times before it was signed; the auditor has found that it "was intended by both parties to embody in it all the terms of the agreement between them."

As I understand the law, when fraudulent misrepresentations are made during preliminary negotiations which result in a written contract, two questions arise: (1) Was the

misrepresentation of such character as to be actionable? (2) Was the right of action lost by the subsequent execution of a written instrument covering the subject-matter of the representation?

On both grounds, it seems to me that the defendant was entitled to judgment on this representation. Carlson Co. v. Ley & Co., 269 Mass. 272, 168 N. E. 812, related to the same transaction as that involved in this case, and apparently the same alleged false representations were relied on there, as in the present proceeding. The differences in the misrepresentations alleged in the two cases appear to be slight and unsubstantial. It was held that none of them were actionable under Massachusetts law. While the law of New York and of the federal courts on such questions is more favorable to the plaintiff than that of Massachusetts, no case in either of those jurisdictions has come to my attention which goes nearly as far as the majority opinion, either in allowing recovery for fraudulent misstatements of intent of purely promissory character, or in disregarding the principle of law which is commonly referred to as the parol evidence rule, viz., that when parties after negotiating an agreement have reduced it to a writing which undertakes to state fully what was agreed upon, neither party can enlarge the written instrument in his favor by evidence as to what was said during the negotiations. In Adams v. Gillig, 199 N. Y. 314, 92 N. E. 670, 32 L. R. A. (N. S.) 127, 20 Ann. Cas. 910, relied on in the majority opinion, it is said: "It may be assumed that promises of future action that are a part of the contract between the parties, to be binding upon them, must be stated in the contract. An oral restrictive covenant, or any oral promise to do or refrain from doing something affecting the property about which a written contract is made and executed between the parties, will not be enforced, not because the parties should not fulfill their promises and their legal and moral obligations, but because the covenants and agreements being promissory and contractual in their nature and a part of, or collateral to, a principal contract, the entire agreement between the parties must be deemed to have been merged in the writing. The value of a writing would be very seriously impaired if the rule mentioned in regard to including the entire agreement in such writing is not enforced. * * * Such rule makes it necessary for the parties to a written contract to include everything therein pertaining to the subject-matter of the principal contract."

(Chase, J., page 318 of 199 N. Y., 92 N. E. 670, 671.)

The facts in Adams v. Gillig were essentially different from the present case. There, a deliberate plan was made to entrap the plaintiff into making a certain contract. Rogers v. Virginia-Carolina Chemical Co., supra, presented the same situation. Others of the cases cited in the majority opinion were actions on contracts, and the false representations were set up in defense. Here, the contract has been accepted by the plaintiffs and fully performed by the defendant.

The present case is, in effect, an effort to impose on the defendant an additional covenant not contained in the written instrument, and of most burdensome character. The alleged obligation, to operate a new office building until it was on a paying basis, shifted the whole burden of the speculation onto the defendant and made the defendant in effect a guarantor of the success of the undertaking. If the parties had understood that the defendant undertook any such obligation, it is inconceivable that it would not have been put into the contract. Whether a false statement is actionable depends, not on whether it can properly be described as "promissory" or as relating to "intent only," but on whether it was of such character and made under such circumstances that the other party had a right to treat it as material to his determination— as Judge Learned Hand acutely suggested in Vulcan Metals Co. v. Simmons Mfg. Co. (C. C. A.) 248 F. 853, 855 at page 857. In the present case, I do not think that the Keelers had the right to go back through the elaborate, written contract to an oral statement of the character under discussion.

Nor am I able to persuade myself, in spite of the contrary opinion of my brethren and Judge A. N. Hand (Arnold v. National Analine Co., 20 F. (2d) 364 at page 370) that, as to representations of intent looking to the future, the parol evidence rule fades out before an allegation of fraud. Loughery v. Central Trust Co., 258 Mass. 172, 154 N. E. 583, which decides the question the other way, seems to me the sounder view. It was there said: "That rule is more than a rule of evidence. It is a statement of the requirement of the law that persons about to regulate their mutual duties by a written contract, shall express in the writing all that is to control their action in the premises and all their mutual obligations in regard thereto. Had the contract embodied all that the plaintiff alleges was promised in the premises, his rem-

edy for damages for failure to perform would have been upon the contract. He cannot maintain an action for the same damages, where some of the promises were not so embodied, by alleging the omitted promises to be fraudulent representations, and seeking recovery in tort. No fraud in keeping 'them out of the contract is alleged." Wait, J., pages 177, 178 of 258 Mass., 154 N. E. 583, 585.

The consequences of the majority opinion seem to me. most unfortunate. It holds in effect that if two parties enter into a written contract, the whole arrangement can be wiped out on proof that something within the field covered by the contract, but not stated in it, was promised with an intent not to perform, by one of the parties during the negotiations. The great burden imposed on this defendant on purely oral testimony, which was contradicted by the defendant's witnesses and appears to me to be inconsistent with other facts found by the auditor, illustrates the length to which the rule approved in the majority opinion goes, and the uncertainty to which it exposes business transactions. Applying Judge Learned Hand's test, above stated, if the plaintiffs ever had the right to rely on the representation under discussion, which I do not believe, they lost it, in my opinion, when they signed the written contract which did not include any such obligation on the defendant's part. Of course, fraudulent statements which relate to matters outside the field of the written instrument, i. e., to matters of "inducement," so called, stand on a very different footing; and fraudulent statements as to material facts lose nothing of their actionable character by being incorporated into a written contract. Whether any given misrepresentation relates to matters of inducement, or to matters within the field of the contract, might be a close question. Fortunately it does not arise in this case because the representation under discussion was clearly within the scope of the contract.

As to the previous decision of the court in this case, the point then before the court was whether the evidence showed a question for submission to the jury. Now the definite facts are stated, and we are called upon to say whether the law was correctly applied. Even if the present question be regarded as covered by our former decision, the rule as to "law of the case" does not compel us to adhere to a statement of law which further consideration shows to be erroneous, as was expressly decided in Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 56 L. Ed. 1152.

The damages do not appear to have been assessed with reference to the promissory aspect of this representation, but only as it was a fraudulent misstatement of present intent, which being relied on by the parties led them to execute the contract. The three alleged false statements, relating, respectively, to the cost of the building, to .the defendant making no profit on it, and to the defendant's intent to operate the building until it was on a paying basis, were treated by the auditor as a single representation. It does not appear what result he would have reached if this representation under discussion had .not been included.